(244 P.3d 705)
No. 101,624

STATE OF KANSAS, *Appellee*, v. MYOUN SAWYER, *Appellant*.

Opinion filed January 7, 2011.

*Reid T. Nelson*, of Capital and Conflicts Appeals Appellate Defender Office, for appellant.

*Jennifer S. Tatum*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, for appellee.

Before HILL, P.J., PIERRON and LEBEN, JJ.

LEBEN, J.: Myoun Sawyer contends that the district judge should have recused himself rather than preside over his trial for criminal threat. Sawyer also argues that the judge incorrectly told the jury that it could infer intention from a person's acts and that the judge should have had more testimony read back to the jury than the jury requested. We find no error: Although the judge had presided over prior criminal cases involving Sawyer, a judge's knowledge about a defendant gained through judicial proceedings generally is not cause for removal of the judge. This is also not the sort of extraordinary case in which bias should be presumed. As for Sawyer's other arguments about trial errors, the inferred-intent instruction has been upheld in similar cases, and the district court did not err when it provided a read-back only of the specific testimony the jurors requested.

The charge against Sawyer arose while he was in the Wyandotte County Jail for another offense. Penny Saunders, who was working in the jail's commissary, was assigned to deliver pizzas to areas of

the jail housing inmates. She testified that when she stepped into the pod Sawyer was in, he started calling her a bitch and screaming repeatedly, "I'm going to kick your ass," "I'll kill you," and "I'll hit you." A sheriff's deputy, John Lawrence, corroborated Saunders' testimony, and the jury convicted Sawyer of criminal threat, which occurs when a person threatens to commit violence against another with the intent to terrorize the other person. See K.S.A. 21-3419(a)(1).

We will discuss each of Sawyer's claims on appeal separately; each involves a somewhat different standard of review.

I. *Reversal for Alleged Judicial Bias Is Not Required in the Absence of Either a Showing of Actual Bias or a Probability of Bias Based on Objective Facts.*

Sawyer sought the voluntary recusal of the judge presiding over his case, Judge John McNally. After Judge McNally denied that request, Sawyer filed a formal motion to disqualify McNally under K.S.A. 20-311d, which was denied by Chief Judge Wayne Lampson. In his motion, Sawyer alleged that McNally had been the judge in two previous criminal cases against Sawyer, that McNally had previously recused himself in one of those cases, and that "McNally is the defendant in a civil litigation matter that is currently pending in the Kansas Court of Appeals and would thus not be fair and impartial."

Our record also contains Judge McNally's confirmation that he had recused in a prior case involving Sawyer. Judge McNally said that he did so in the prior case because it was to be a trial to the judge; he did not believe he needed to recuse in a case like this one in which the jury would determine guilt or innocence:

"Well, of course, the difference—the main difference between this case and that case is that in that one the defendant had waived a jury trial and it was a situation where I would be sitting as the finder of fact. And given some of the past dealings between myself and Mr. Sawyer, I thought that probably would be a problem. I don't believe that that's the case here because a jury is going to determine his guilt or innocence."

The Kansas Supreme Court has applied a two-part test to determine whether a judge has violated a defendant's due-process

rights by refusing to recuse when presiding over a criminal trial. First, the defendant must show that the trial judge had a duty to recuse. *State v. Walker*, 283 Kan. 587, 605, 153 P.3d 1257 (2007). On this first step of the test, no showing of actual bias is required because a judge should recuse when his or her impartiality might reasonably be questioned. 283 Kan. at 608. But a showing of actual bias is required on part two of the test: the defendant must show actual bias or prejudice that warrants setting aside the conviction or sentence. See 283 Kan. at 608-09.

In Sawyer's appellate brief, he makes no reasoned argument about how any actual bias by Judge McNally might have actually affected the result in his case, so we might reject his claim on the basis that he cannot satisfy the second part of this test. But we believe further consideration is required for two reasons. First, when sentencing Sawyer, Judge McNally was called upon to make two decisions that were wholly discretionary to the trial judge and required no explanation: the number of months for the sentence (out of three possible choices in the sentencing guidelines grid box) and whether the sentence would be concurrent or consecutive. Although Judge McNally chose the standard sentence, Sawyer had requested a mitigated one. Judge McNally also chose to run Sawyer's sentence consecutive to his prior convictions. Arguably such choices could have been the result of bias or prejudice. Second, the United States Supreme Court's decision in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009), may require that we expand the traditional Kansas test so that actual bias need not be demonstrated in some limited circumstances.

In *Caperton*, the Court recognized that there are some instances in which even though actual prejudice had not been proved, "there are objective standards that require recusal when 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' " 129 S. Ct. at 2257 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 [1975]). In the *Caperton* case, which was a civil matter, the West Virginia Supreme Court had on a 3-2 vote reversed a $50 million jury verdict against a corporation—a corporation whose president

had spent about $3 million in support of the reelection of one of the justices in the majority while the case was pending in the state's courts. The losing party contended that the company president had personally spent $1 million more than the combined amount spent by both candidates in the election. Still, the Court held that the mere appearance of bias is not sufficient to warrant recusal: there must be objective facts in the particular case indicating the probability of bias that is so great as to deny due process. 129 S. Ct. at 2265. The Court found that was the case in *Caperton*, though it recognized that the facts it faced were extraordinary, not routine. 129 S. Ct. at 2265.

Our Supreme Court has now recognized and applied the *Caperton* rule in *Davenport Pastures, LP v. Morris County Bd. of County Comm'rs*, 291 Kan. 132, 139, 144-46, 238 P.3d 731 (2010). Based in part on its review of *Caperton*, our Supreme Court concluded that proof of actual bias by the judge or decision-maker is not required to show a due-process violation. 291 Kan. 132, Syl. ¶ 3. Even without proof of actual bias, the court held that due process is violated when based on an objective analysis the probability of actual bias is too high to be constitutionally tolerable. 291 Kan. at 146.

*Davenport Pastures*, like *Caperton*, was a civil case. But whether the case is civil or criminal, we evaluate judicial bias based on constitutional due-process requirements. See *Walker*, 283 Kan. at 605. Thus, even though our Supreme Court has not yet discussed the impact of *Caperton* on the test we apply in criminal cases, we must incorporate the teachings of *Caperton* into our established standard of review. Courts in other states that have faced this question after *Caperton* have likewise adopted its standard into that state's preexisting tests. *E.g., People v. Freeman*, 47 Cal. 4th 993, 996, 103 Cal. Rptr. 3d 723, 222 P.3d 177 (2010); *State v. Ehrmantraut*, 2010 WL 2035700, at *4-5 (Minn. App. 2010) (unpublished opinion).

The practical effect of *Caperton* on our traditional test is that actual bias or prejudice will be presumed when we conclude, based on objective standards, that the probability of actual bias was too high to be permitted. As the Court noted in *Caperton*, there are two other situations in which bias or prejudice has been presumed

and judges routinely disqualified on due-process grounds: where the judge has a direct financial interest in the outcome of a case and where the judge is presiding in a criminal contempt case over allegedly illegal conduct that occurred in front of the judge. 129 S. Ct. at 2263-64; 129 S. Ct. at 2267 (Roberts, C.J., dissenting). These situations are essentially examples, though, of the basic rule set out in *Caperton*. In both of the examples, as in *Capterton* itself, the Court concluded based on objective standards that the probability of actual bias was too high to be permitted.

In sum, then, we restate our test post-*Caperton*: First, the defendant must show that the trial judge had a duty to recuse. Second, the defendant must show actual bias or prejudice that warrants setting aside the conviction or sentence. Bias or prejudice will be presumed only where, based on objective standards, the probability of actual bias is too high to be constitutionally tolerable.

We now must apply this test to Sawyer's case. Sawyer essentially made three allegations: (1) that Judge McNally had presided over prior criminal cases against Sawyer; (2) that Judge McNally had recused in one of those cases, which was tried to the judge; and (3) that "Judge McNally is the defendant in a civil litigation matter that is currently pending in the Kansas Court of Appeals."

The first allegation is not one that ordinarily requires recusal. The bias or prejudice that requires recusal is personal in nature— "a hostile feeling or spirit of ill will against one of the litigants"— not "views based upon matters arising during the course of the litigation." *State v. Foy*, 227 Kan. 405, 411, 607 P.2d 481 (1980). What a judge learns while presiding over even successive criminal cases involving the same defendant generally does not require disqualification because none of the judge's knowledge has come from extrajudicial sources. See Alfini, Lubet, Shaman & Geyh, Judicial Conduct and Ethics § 4.05A, p. 4-17 (4th ed. 2007). In accordance with this rule, the Kansas Supreme Court found that a trial judge need not be disqualified when presiding over a second murder case involving the same defendant even when the judge had made highly critical comments about the defendant when sentencing him on the first murder conviction. See *State v. Sappington*, 285 Kan. 176, 192-93, 169 P.3d 1107 (2007). Moreover, a rule requiring

recusal any time a judge had previously presided over a criminal case involving the same person would be untenable. As the Minnesota Court of Appeals recently put it, "For the many judicial districts that have fewer judges than repeat offenders, [such a] rule against presiding over cases involving familiar parties would be impossible. And the well-founded confidence we put in our district judges to remain objective renders [such a] rule unnecessary." *Ehrmantraut*, 2010 WL 2035700, at *5. Sawyer's mere allegation that Judge McNally had presided over a prior criminal charge against the defendant does not establish the personal bias or prejudice that disqualifies the judge from hearing a later case against the same defendant.

The third allegation does not have sufficient factual information to provide a ground for recusal. Sawyer never said in his affidavit or in his written motion for recusal that *he* had filed a suit against Judge McNally; Sawyer simply said that Judge McNally was a defendant in some matter then pending in the Kansas appellate courts. Our Clerk's office shows only one civil matter involving Judge McNally—a mandamus action filed by someone other than Sawyer in 2005 and dismissed shortly after filing. Sawyer has not shown that he had any connection to that action, and it was dismissed almost 2 years before he filed his motion to disqualify Judge McNally. No reference is made in the recusal-hearing transcript to any lawsuit against Judge McNally. The allegation in Sawyer's affidavit that there was some civil action pending against Judge McNally does not provide a ground to require Judge McNally's recusal in a criminal case against Sawyer without an allegation that Sawyer had direct involvement adverse to Judge McNally in the civil case.

We are left, then, with only the second allegation—that Judge McNally had recused himself in a prior criminal case against Sawyer that was tried to a judge. Sawyer may be right that Judge McNally, having recused in a prior case against Sawyer, should have recused in this one. A judge should recuse when the circumstances would create reasonable doubt about the judge's impartiality in the mind of a reasonable person with knowledge of the circumstances. *Sappington*, 285 Kan. at 192. We need not decide

whether Sawyer's claim meets the first part of the Kansas two-part test, however, because he cannot meet part two. No evidence suggests that Judge McNally showed actual bias against Sawyer while the judge handled this case, and our Supreme Court has often rejected claims of bias based primarily on the existence of rulings that went against the defendant. *E.g.*, *Sappington*, 285 Kan. at 193; *Walker*, 283 Kan. at 608-09; *State v. Reed*, 282 Kan. 272, 277-78, 144 P.3d 677 (2006); *State v. Alderson*, 260 Kan. 445, 454-55, 922 P.3d 435 (1996).

We recognize that after *Caperton* we may presume the existence of bias in limited circumstances where the probability of bias is too high. But when we consider the different roles of a trial judge in the context of when Judge McNally did—and did not—recuse, we do not find a probability of bias in this case.

Judge McNally was assigned to handle at least three cases involving Sawyer. In one, Judge McNally recused because of his familiarity with Sawyer in a prior case. But the case in which Judge McNally recused differed from our case in that Sawyer's guilt in that case was to be decided by the judge. At a judge-tried case, the judge must be able to impartially assess the testimony of the defendant, should he choose to testify, and to impartially assess the defendant's guilt. Even though judges are not automatically disqualified from presiding over multiple cases against the same defendant, a judge could reasonably have difficulty setting aside all of those past dealings when evaluating the defendant's credibility and guilt. See Wistrich, Guthrie & Rachlinski, *Can Judges Ignore Inadmissible Information? The Difficulty of Deliberately Disregarding*, 153 U. Penn. L. Rev. 1251 (2005).

But that was not Judge McNally's role in this case. In a jury trial, the judge's main roles are managing the trial in a fair manner, determining the admissibility of evidence, and preparing jury instructions. None of these tasks focuses on determining the defendant's credibility. The jury, not the judge, determines guilt. If the jury finds the defendant guilty, the judge does sentence the defendant, as Judge McNally did here. But in a felony case like this one, any judge will receive a presentence-investigation report detailing the defendant's criminal history, and any judge may give

appropriate consideration to that history. We do not find a probability of bias in this setting; it is certainly not the sort of extraordinary case envisioned in *Caperton*. We therefore find no error arising from Judge McNally's role in this trial.

II. *The District Court's Use of a Pattern Jury Instruction Was Not Clearly Erroneous.*

Sawyer was convicted of criminal threat based primarily on the testimony of the victim, Penny Saunders, and a sheriff's deputy, John Lawrence, who corroborated her testimony. But Sawyer also testified, and he denied making any threats.

The district court provided an instruction telling the jury the facts the State had to prove to convict Sawyer:

"The defendant is charged with Criminal Threat. The defendant pleads not guilty.
  "To establish this charge, each of the following claims must be proved:
  "1.  That the defendant threatened to commit violence;
  "2.  That such threat was communicated with the intent to terrorize another, to-wit: Penny Saunders; and
  "3.  That this act occurred on or about the 6th day of July, 2007, in Wyandotte County, Kansas."

The district court provided a standard instruction on the State's burden of proof, advising the jury that "[t]he State has the burden to prove the defendant is guilty. The defendant is not required to prove he is not guilty." The jury was also told that the State had to prove the defendant guilty beyond a reasonable doubt.

As is often the case, the jury had to determine whether Sawyer had said things to Saunders "with the intent to terrorize" based on inferences from the facts the jury determined were true. The district court gave another instruction, found in Pattern Instructions for Kansas (PIK) Criminal 3d 54.01, which the court evidently concluded would be helpful to the jury in this task:

"Ordinarily, a person intends all of the usual consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

Sawyer did not object to this instruction.

On appeal, Sawyer now contends that this instruction improperly relieved the State of the burden of proving that he intended to terrorize Saunders because the instruction allows the jury to presume that intent rather than requiring the State to prove it. Because Sawyer didn't object to the instruction, however, we review only for clear error. See K.S.A. 22-3414(3). A jury instruction is clearly erroneous only if we are firmly convinced that there is a real possibility that the jury would have returned a different verdict. *State v. McCarley*, 287 Kan. 167, Syl. ¶ 13, 195 P.3d 230 (2008). This is not such a case.

Our Supreme Court "has consistently approved PIK Crim. 3d 54.01." *State v. Ellmaker*, 289 Kan. 1132, 1143, 221 P.3d 1105 (2009) (citing cases). In *Ellmaker*, the Court basically considered the same argument being made here by Sawyer. The district court in *Ellmaker* had instructed the jury that first-degree murder required the State to prove that the killing was done intentionally and with premeditation; the court had also used PIK Crim. 3d 54.01, which told the jury that a person ordinarily intends the usual consequences of his or her voluntary actions. Ellmaker argued that this impermissibly lowered the State's burden of proof, but the court rejected that argument, concluding that PIK Crim. 3d 54.01 merely told the jury an inference it could make based on the evidence. So the State's burden of proof was not diluted. 289 Kan. at 1143-44.

Sawyer recognizes in his appellate brief that the Kansas Supreme Court has upheld the use of PIK Crim. 3d 54.01. Yet he argues that the instruction violates the rule that the State must prove every fact necessary to its case beyond a reasonable doubt, citing the 1970 United States Supreme Court case of *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). But our Supreme Court has been well aware of *Winship* even as the court has upheld the use of PIK Crim. 3d 54.01. See *State v. Harkness*, 252 Kan. 510, 525-27, 847 P.2d 1191 (1993) (citing *Winship* and finding no error in the use of PIK Crim. 2d 54.01).

Sawyer also argues that the use of a permissive-presumption instruction must be justified under the specific facts of each case.

Our Supreme Court has held that PIK Crim. 3d 54.01 merely tells the jury about an inference it may make from evidence, not an evidentiary presumption of any kind. *Ellmaker*, 289 Kan. at 1144; *Harkness*, 252 Kan. at 525-27. But even if it were a true presumption, Sawyer's argument that there is no factual relationship between the facts of his case and such a presumption would not be well taken. Although Sawyer testified otherwise, the State presented evidence that Sawyer told the victim, "Bitch, I'm going to kick your ass." Jurors could reasonably conclude from that statement that Sawyer intended to strike fear in the victim through that statement.

III. *The District Court's Decision to Read Back Only the Testimony Specifically Requested by the Jury Was Not Erroneous.*

While a jury deliberates, it may ask for some of the testimony to be read back to it. K.S.A. 22-3420(3). When this happens, the district court is required to accede to the jury's request, but the judge retains some discretion regarding the manner and scope of the read-back. *State v. Bryant*, 285 Kan. 970, 984, 179 P.3d 1122 (2008). As our court noted in *State v. Jones*, 41 Kan. App. 2d 714, Syl. ¶ 3, 205 P.3d 779 (2009), *rev. denied* 290 Kan. ___ (2010), the district court must attempt to respond to the jury's question in a meaningful way or seek clarification or limitation of the request. If the court does so, then we determine whether its response was sufficient under an abuse-of-discretion standard, reversing only if no reasonable person would have agreed with the district court's approach.

Soon after the jury in Sawyer's case began to deliberate, it asked for transcripts of all the testimony, not realizing that accurate, proofread transcripts aren't automatically and instantaneously produced. When the judge told them that the court reporter would instead have to read back all of the testimony to them, the judge said that "most of them shook their head." The judge told the jury that it could, if it wished, submit a more specific request.

The jury then submitted a more specific request. That request is not in our record, but the judge summarized that the jurors sent a note that "indicates a couple of things that they want. One is the

deputy's testimony, when did he hear 'bitch'/'he was going to kick her ass.' And then also Detective Chavez, did Penny have access to elevator."

The judge showed counsel for the parties the portions of testimony from Deputy Lawrence and Detective Chavez that would be read back per this request. The portion from Detective Chavez indicated that Saunders was not able to leave the area in which she testified Sawyer was threatening her:

"Q. Where could she have gone rather than sit there?

"A. Well, she—like, there's some elevators there, or she could have gone into some housing units, but she would have had to be let in by central—central control to the other housing units where there's other inmates."

Sawyer's attorney told the district court that Deputy Lawrence had testified that those who work in the jail generally had an access card that would allow them to go up and down the elevator without having to ask for help from central control personnel. Sawyer's attorney asked that this testimony also be read back, but the district judge denied that request: "Well, [the jurors] specifically asked for Detective Chavez, and so it well may be that they recall the testimony from the other witnesses, and they just want to know what Chavez said about it. And that's what it looks like to me."

The district court certainly attempted to respond to the jury's request in a meaningful way. When the jury asked for transcripts of all testimony, the court explained the process and sought a more specific request. The jury asked for portions of the testimony of two witnesses to be read back to it, and the district court provided that testimony.

Sawyer likens the district court's response to the *Jones* case, in which the district court summarized some testimony but did so inaccurately. See 41 Kan. App. 2d at 724. But that's not what happened in Sawyer's case at all. The district court here didn't answer any jury question about what the evidence had shown as the judge did in *Jones*. The court in Sawyer's case simply had the requested testimony read back and declined to have additional testimony read to the jury that it had not requested.

The question we must answer, then, is whether the district court abused its discretion by reading back only the specific testimony

requested. We do not find an abuse of discretion. The jury of course *heard* all the testimony during the trial; we cannot conclude that all of the members of the jury simply forgot that Deputy Lawrence had testified about Saunders' access to the elevator when the jury specifically asked for Detective Chavez' testimony on the elevator-access issue. The district court did not abuse its discretion by providing the jury the exact testimony it specifically requested.

The judgment of the district court is therefore affirmed.