No. 101,624

STATE OF KANSAS, *Appellee*, v. MYOUN SAWYER, *Appellant*.
(305 P.3d 608)

Opinion filed July 26, 2013.

*Reid T. Nelson,* of Capital and Conflicts Appellate Defender Office, argued the cause and was on the brief for appellant.

*Jennifer S. Tatum,* assistant district attorney, argued the cause, and *Jerome A. Gorman,* district attorney, and *Steve Six,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: On petition for review, Myoun L. Sawyer argues that his conviction for criminal threat must be reversed and his case remanded, because (1) the district court judge was required to recuse and failed to do so; (2) his jury was inappropriately provided a permissive inference instruction on intent; and (3) the district judge abused his discretion by refusing to read certain testimony back to the jury upon its request.

We hold that Sawyer is entitled to reversal and remand under our constitutional analysis of his first issue. We therefore reach only his second additional issue and not his third; the second issue is likely to arise on retrial while the third is not.

## FACTS AND PROCEDURAL BACKGROUND

As a civilian employee of the Wyandotte County Jail, Penny Saunders was responsible for delivering pizza to the F-Pod, a housing unit with a common area in which prisoners could socialize unrestrained. After a deputy opened a remotely controlled door to admit Saunders to the unit, she approached the entry and noticed several prisoners gathered at a yellow line about 5 feet inside. The prisoners are prohibited from crossing the line. Sawyer was one of the prisoners near the line, and he yelled at Saunders, "Bitch, I'm going to kill you. Bitch, I'll beat your ass. Bitch, I'll kill you," while he and the other gathered prisoners were jumping and pointing at her.

A deputy nearby saw Sawyer yelling at Saunders. The deputy tried to calm Sawyer, but Sawyer refused to go back to his cell. The deputy decided to summon other officers. By the time the deputy had done so, Saunders had retreated down a hallway and

was standing in a corner. As deputies were taking Sawyer back to his cell, they passed the corner in which Saunders was standing, and Sawyer continued to yell at her.

These events led to Sawyer's jury trial for criminal threat before District Judge John J. McNally, now retired. Judge McNally has presided over three cases involving Sawyer. One led to a bench trial on assault and battery, from which the judge recused. One led to a jury trial on lewd and lascivious behavior; the judge did not recuse in that case. The last of the three cases was the prosecution underlying this appeal.

Sawyer filed a motion seeking Judge McNally's recusal on February 28, 2008. As provided for in the governing statute, K.S.A. 20-311d, the judge held a hearing on the motion at which Sawyer's counsel argued:

"Judge, my client as you know, is—was also a defendant in another proceeding and we filed a change of judge. And in that proceeding you actually granted recusal of you as trial judge in that case.

"For all of the same facts and circumstances surrounding that my client is requesting a change of judge. We believe that by you sitting in this matter that he would be unfairly prejudiced with regards to your guys' past communication between each other. Apparently you have had—even though I wasn't present during some of that, you've had some interactions between each other that would seem to my client to believe that you would—he would be unfairly prejudiced."

Judge McNally responded:

"Well, of course, the difference—the main difference between this case and that case is that in that one the defendant had waived a jury trial and it was a situation where I would be sitting as the finder of fact. And given some of the past dealings between myself and Mr. Sawyer, I thought that would probably be a problem. I don't believe that that's the case here because a jury is going to determine his guilt or innocence."

After Judge McNally declined to recuse, Sawyer filed an additional motion and affidavit. See K.S.A. 20-311d (a)-(b) (if judge declines to recuse, party may file affidavit; chief judge determines whether affidavit legally sufficient to require recusal); see also *State v. Robinson*, 293 Kan. 1002, 1032, 270 P.3d 1183 (2012) (when appellate court reviews legal sufficiency of recusal affidavit, factual allegations assumed to be true).

Sawyer's additional motion listed Judge McNally's recusal from the assault and battery case as the reason for the requested recusal request. Sawyer's affidavit relied on other grounds: (a) Judge McNally told Sawyer in an earlier case that no pro se pleadings would be accepted; (b) in that same case, Judge McNally ordered Sawyer gagged during his transport from the Sheriff's Office; (c) Judge McNally was the defendant in a civil case pending before the Court of Appeals; and (d) Judge McNally had made rulings in past cases that demonstrated the judge's bias in favor of the prosecution.

The chief judge of the district denied the motion, and the pretrial conference in this case was held on July 18, 2008.

Sawyer was convicted of criminal threat and appealed. A panel of our Court of Appeals rejected each of his three assertions of reversible error. See *State v. Sawyer*, 45 Kan. App. 2d 156, 244 P.3d 705 (2011). On the way, it agreed with Judge McNally's reliance on the difference between a trial judge's role in a bench trial and a trial judge's role in a jury trial. 45 Kan. App. 2d at 162-63.

## DISCUSSION

### Recusal of Judge McNally

Before discussing the substance of this issue, we must address the State's initial procedural argument that Sawyer's motion urging Judge McNally's recusal was untimely. Under K.S.A. 20-311f, a litigant seeking a change of judge may do so as late as "[7] days after pretrial, or after receiving written notice of the judge before whom the case is to be heard, whichever is later." Sawyer's motion evidently predated the pretrial in this case and was therefore timely.

In Kansas, there are at least three possible substantive bases on which a litigant may argue that a judge's recusal is required. First, there is a list of statutory factors that may be alleged in an affidavit of the type filed by Sawyer in this case. See K.S.A. 20-311d(c)(1)-(5). The factors are:

"(1) The judge has been engaged as counsel in the action prior to the appointment or election as judge.

"(2) The judge is otherwise interested in the action.

"(3) The judge is related to either party to the action.

"(4) The judge is a material witness in the action.

"(5) The party or the party's attorney filing the affidavit has cause to believe and does believe that on account of the personal bias, prejudice or interest of the judge such party cannot obtain a fair and impartial trial or fair and impartial enforcement of post-judgment remedies. Such affidavit shall state the facts and the reasons for the belief that bias, prejudice or an interest exists."

Second, there is the Kansas Code of Judicial Conduct. Kansas Supreme Court Rule 601B, Canon 2 (2012 Kan. Ct. R. Annot. 723), which states that "[a] judge shall perform the duties of judicial office impartially, competently, and diligently." Rule 2.11, under this Canon, addresses disqualification: "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Rule 2.11(A) (2012 Kan. Ct. R. Annot. 729). Circumstances in which a judge's impartiality might reasonably be questioned cover, among others, those in which the judge has a personal bias or prejudice concerning a party or a party's lawyer. Rule 2.11(A) (1).

Third, a litigant seeking a judge's recusal may rely on the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876-87, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009) (identifying four instances in which Due Process Clause requires recusal); see also *Robinson*, 293 Kan. at 1030-35 (citing *Davenport Pastures v. Board of Morris County Comm'rs*, 291 Kan. 132, 144-46, 238 P.3d 731 [2010] [quoting *Winthrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)]) (due process violated when, under all circumstances, probable risk of actual bias too high to be constitutionally tolerable).

We pause for a brief additional discussion of these three bases. The United States Supreme Court has characterized the Due Process Clause as the " 'constitutional floor' " on recusal claims, with the ceiling set by " 'common law, statutes, or the professional standards of the bench and bar.' " *Caperton*, 556 U.S. at 889 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 [1997]). The Court has recognized that Congress and the

States are free to " 'adopt recusal standards more rigorous than due process requires' " and that generally "the codes of judicial conduct provide more protection than due process requires." *Caperton*, 556 U.S. at 889-90 (quoting *Republican Party of Minn. v. White*, 536 U.S. 765, 793, 122 S. Ct. 2528, 153 L. Ed. 2d 694 [2002] [Kennedy, J., concurring]). Accordingly, "most disputes over disqualification will be resolved without resort to the Constitution." *Caperton*, 556 U.S. at 890.

This language suggests that, when all three types of arguments have been raised, the proper analysis for disqualification claims begins with the statutory framework and the Code of Judicial Conduct. Analysis under these provisions may eliminate the need for constitutional analysis, see *Wilson v. Sebelius*, 276 Kan. 87, Syl. ¶ 3, 72 P.3d 553 (2003) (appellate court should avoid making unnecessary constitutional decisions), because a claim based on K.S.A. 20-311d and/or the Code of Judicial Conduct that is resolved in the claimant's favor would end the matter. Also, it is at least theoretically possible that a claim invoking K.S.A. 20-311d and/or the Code of Judicial Conduct may relate to a problem that does not implicate the Due Process Clause. See *Caperton*, 556 U.S. at 876 (kinship recusal generally matter of legislative discretion rather than one of constitutional validity); see also K.S.A. 20-311d(c)(3) (kinship basis for recusal).

Our previous cases have tended to obscure any analytical distinctions and overlap between claims depending on one or more of these three bases. See, *e.g., State v. Schaeffer*, 295 Kan. 872, 874-76, 286 P.3d 889 (2012) (defense alleges sentence product of "judicial bias, prejudice, corrupt motive"; two-part test believed to be applicable to due process challenge employed; Code of Judicial Conduct disqualification standard also cited); *Robinson*, 293 Kan. at 1030-35 (two-part test believed to be applicable to due process challenge suitable for application in criminal as well as civil cases; holding focuses on whether chief judge's assessment of legal sufficiency of K.S.A. 20-311d[b] affidavit correct); *State v. Logan*, 236 Kan. 79, 85-86, 689 P.2d 778 (1984) (invoking standards under statute, Code of Judicial Conduct, Constitution). Perhaps because of our earlier opinions' shortcomings, Sawyer's arguments in favor

of Judge McNally's recusal have vacillated between one we understand to depend only on the statutory framework and one we understand to seek shelter under the Due Process Clause. Sawyer makes no claim under the Code of Judicial Conduct.

*Statutory Framework*

Under K.S.A. 20-311d, a party must first file a motion for change of judge; if that motion is denied, then the party must immediately file a legally sufficient affidavit alleging grounds set forth in the statute. Sawyer filed an affidavit after Judge McNally denied his motion for change of judge.

"When faced with an affidavit of prejudice filed pursuant to K.S.A. 20-311d, this court has unlimited review, and on appeal must decide the legal sufficiency of the affidavit and not the truth of the facts alleged. [Citations omitted.] We examine whether the affidavit provides facts and reasons pertaining to the party or his or her attorney which, if true, give fair support for a well-grounded belief that he or she will not obtain a fair trial. [Citation omitted.] We determine whether the charges are grounded in facts that would create reasonable doubt concerning the court's impartiality, not in the mind of the court itself, or even necessarily in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances. [Citation omitted.]" *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 385, 22 P.3d 124 (2001).

In Sawyer's affidavit, he alleges that Judge McNally prevented filing of pro se pleadings and ordered him transported with a gag in place. Sawyer does not address the reasoning behind these orders, and, although they should and would be rare, they are not inevitably unjustified. We will not speculate on this point. Sawyer also alleges that Judge McNally is a defendant in a pending civil matter, but neither the case nor the cause of action is identified. Again, without more, we cannot say that the chief judge's refusal to force Judge McNally's recusal was error under the statutory framework. Finally, Sawyer also points to previous adverse legal rulings made by Judge McNally. Adverse legal rulings alone cannot form the basis for a recusal. K.S.A. 20-311d(d); *State v. Walker*, 283 Kan. 587, 609, 153 P.3d 1257 (2007). We therefore rule that Sawyer's affidavit was legally insufficient under K.S.A. 20-311d(d).

*Due Process Clause*

We now take up Sawyer's remaining argument: due process. We judge the adequacy of due process under a de novo standard of appellate review. See *Robinson*, 293 Kan. at 1030 (citing *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 [2008]). In earlier opinions, we have stated that the two-part due process test for whether a criminal defendant is able to obtain a reversal of a conviction or a vacation of a sentence because of a judge's failure to recuse asks, first, whether the judge had a duty to recuse from the case because the judge was biased, prejudiced, or partial. If so, then the test has examined whether the judge's failure to recuse resulted in actual bias or prejudice. See *Robinson*, 293 Kan. at 1031; accord *Schaeffer*, 295 Kan. at 875.

Given the muddle in our earlier cases, one might legitimately question whether this two-part test is validly applied in a due process context. We need not settle that argument here, however, because there has always been a safety valve that relieved a defendant of the obligation to show actual bias or prejudice. Both the United States Supreme Court and we have recognized that the Due Process Clause requires recusal in certain instances in which " 'experience teaches that the probability of actual bias . . . is too high to be constitutionally tolerable.' " *Caperton*, 556 U.S. at 877 (quoting *Withrow*, 421 U.S. at 47).

In *Caperton*, the United States Supreme Court specifically listed four categories of cases in which, as an objective matter, recusal would be required in order to satisfy due process: when a judge has a direct, personal, substantial pecuniary interest in the case; when a judge has an indirect financial interest in the case's outcome; when a judge issues a contempt citation in one case and proceeds to try the contempt citation; and, in rare instances, when a litigant donates to a judge's campaign for office. 556 U.S. at 876-87. *Caperton*, famously, involved a situation in which one of the justices of the West Virginia Supreme Court had been the beneficiary of $3 million in campaign and associated political organization contributions and independent expenditures from a party appearing in a case. That circumstance forced the justice's recusal

even without a demonstration of actual bias. See *Caperton*, 556 U.S. at 886-87.

"In lieu of exclusive reliance on that personal inquiry, or on appellate review of the judge's determination respecting actual bias, the Due Process Clause has been implemented by objective standards that do not require proof of actual bias. [Citations removed.] In defining these standards the Court has asked whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.' [Citation removed.]" *Caperton*, 556 U.S. at 883-84.

In short, *Caperton* did not say that its list of four types of cases in which due process would require recusal was exclusive. Indeed, its analysis and language demonstrate the opposite.

Here, we do not have any allegation that Judge McNally had a pecuniary interest of any sort in the case's outcome. We also do not have a situation in which Judge McNally conducted a trial on his earlier citation of Sawyer for contempt. Sawyer does not accuse Judge McNally of having received a substantial campaign donation from the prosecutor. We are not dealing with any of the four *Caperton* situations.

Yet, in our view, we have something just as, if not more, definitive on Judge McNally's duty to recuse: He had already judged himself unable to rule impartially in the earlier prosecution of Sawyer for assault and battery. In *Caperton*, the Court recognized that a mere heightened risk of actual bias could lead to unacceptable peril to due process. Certainly that is true when bias has previously been admitted and inadequately explained away.

On the subject of whether Judge McNally had adequately dispelled any worry about bias, we note that, in Sawyer's earlier prosecution for lewd and lascivious behavior, from which Judge McNally did not recuse and which eventually led to an unpublished Court of Appeals opinion, *State v. Sawyer*, No. 101,062, 2009 WL 4639488 (Kan. App. 2009), *rev. denied* 290 Kan. 1102 (2010), Sawyer argued that Judge McNally had abused his discretion during sentencing by acting with bias and prejudice. Although the Court of Appeals panel ultimately rejected Sawyer's abuse of discretion claim and we did not accept review of its ruling, the panel ex-

pressed grave concern that the judge had told Sawyer to "be quiet" and "shut up" during the sentencing hearing. The panel emphasized the Code of Judicial Conduct's requirement that a judge " 'be patient, dignified, and courteous,' " even during difficult hearings. 2009 WL 4639488, at *4 (quoting *State v. Hayden*, 281 Kan. 112, 125, 130 P.3d 24 [2006]). The necessity of this admonition does nothing to reassure us that whatever caused Judge McNally to recuse in the assault and battery had dissipated by the time he tried the lewd and lascivious case or, for that matter, by the time he tried this criminal threat case.

Moreover, we specifically reject Judge McNally's and the Court of Appeals' reliance here on the fact that this case was tried to a jury rather than to the bench. Although the judge in a criminal jury trial does not find facts, he or she still must make many rulings that affect the defendant's ability to obtain a fair trial. Some of these rulings rise and fall on the judge's discretion alone, and they can have dramatic impact on the evidence the jury hears as well as both parties' ability to present their arguments. See, *e.g.*, *State v. Smith*, 296 Kan. 111, Syl. ¶ 1, 293 P.3d 669 (2012) (trial judge's weighing of probative value, prejudicial impact of evidence under K.S.A. 60-455 reviewed only for abuse of discretion); *State v. Holman*, 295 Kan. 116, 142, 284 P.3d 251 (2012) (judge's limitation on scope of cross-examination subject to review only for abuse of discretion). It nearly goes without saying that a criminal trial judge also is inevitably vested with considerable discretion at sentencing. See, *e.g.*, *State v. Turner*, 252 Kan. 666, 667-68, 847 P.2d 1286 (1993) (if judge imposes sentence within guidelines—absent showing of partiality, prejudice—no abuse of discretion). The bottom line is this: No distinction between the role of a trial judge in a criminal jury trial versus his or her role in a criminal bench trial mitigates an acknowledged preexisting bias or prejudice.

Reversal and remand are required here. Judge McNally had previously chosen to recuse in Sawyer's assault and battery bench trial; the judge's intemperate demeanor in Sawyer's intervening jury trial for lewd and lascivious behavior drew a stern admonition from the Court of Appeals; and Judge McNally's mere observation that this case involved a jury trial rather than a bench trial did nothing to

ameliorate any earlier need for recusal. Trial of this case followed less than 18 months after the lewd and lascivious jury trial, which, in turn, came only 2 months after the assault and battery prosecution in which Judge McNally's own assessment of his impartiality led to recusal. Our experience teaches us that the probability of actual bias in this case was "too high to be tolerable" under the Due Process Clause. The proceeding sank beneath the " 'constitutional floor.' " *Caperton*, 556 U.S. at 889.

*Jury Instruction on Permissive Inference of Intent*

Sawyer's second issue questions the propriety of Instruction No. 7, which provided:

"Ordinarily, a person intends all of the consequences of his voluntary acts. This inference may be considered by you along with all the other evidence in the case. You may accept or reject it in determining whether the State has met its burden to prove the required criminal intent of the defendant. This burden never shifts to the defendant."

This instruction is nearly identical to PIK Crim. 3d 54.01. Sawyer did not object to it at trial, but now he asserts both that it eliminated the State's obligation to prove intent and that it was not supported by the facts proved. The Court of Appeals rejected this argument, recognizing that this court has repeatedly approved the instruction; that it does not set up a presumption; and that it, therefore, is not fact-dependent. *Sawyer*, 45 Kan. App. 2d at 164-65.

The absence of an objection normally means that Sawyer could obtain a reversal of his conviction on this issue only if this instruction was clearly erroneous. See K.S.A. 2012 Supp. 22-3414(3); *State v. Raskie*, 293 Kan. 906, 921-22, 269 P.3d 1268 (2012). Because Sawyer already is entitled to reversal on his first issue, we review this instruction only to provide guidance on remand.

Sawyer concedes that such a permissive inference instruction has been approved by this court; we have rejected the argument that it lessens or removes the State's burden to prove the element of intent beyond a reasonable doubt. See *State v. Harkness*, 252 Kan. 510, 526, 847 P.2d 1191 (1993) (citing *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 369 [1970]). Sawyer does not persuade us otherwise, and we reject his first argument.

On factual support, Sawyer's argument is initially somewhat confusing. He first states that "for a permissive *presumption* [instruction] to be justified, the facts of a particular case must be examined." (Emphasis added.) But he then cites to a passage in *United States v. Badilla*, 383 F.3d 1137, 1140 (10th Cir. 2004): " 'A permissive *inference* instruction is valid if there is a rational connection between the fact that the prosecution proved and the ultimate fact presumed.' " (Emphasis added.) As stated, we are concerned with an inference instruction, not a presumption instruction. The State argues incorrectly that the "rational connection" standard advocated by Sawyer has been overruled by the federal courts. The United States Supreme Court did overturn *Badilla* for reconsideration of its permissive inference discussion. See *Badilla v. United States*, 543 U.S. 1098, 125 S. Ct. 1086, 160 L. Ed. 2d 1000 (2005) (vacating and remanding case for reconsideration in light of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 [2005]). But the United States Court of Appeals for the Tenth Circuit reaffirmed the rational connection standard on remand. See *United States v. Badilla*, 419 F.3d 1128, 1131-32, (10th Cir. 2005). We have not previously adopted the rational connection standard discussed in *Badilla*, but we acknowledge the general rule that a permissive inference instruction violates due process if "the inference of the one from proof of the other is arbitrary because of the lack of connection between the two in common experience." 29 Am. Jur. 2d, Evidence § 209, p. 222.

Here, Sawyer argues that the victim's fear was the unintentional consequence of his actions and thus, under the facts of the case, the instruction was unjustified. See *State v. Williams*, 295 Kan. 506, Syl. ¶ 4, 286 P.3d 195 (2012) (to avoid error, instruction must be factually appropriate). We disagree. The State presented evidence that Sawyer yelled at Saunders while standing at a line he was prohibited from crossing. That Sawyer intended to place the victim in fear by yelling at her and calling her names is not "arbitrary because of a lack of connection." It is at least a reasonable inference. The judge did not err in giving the permissive inference instruction. Assuming the same evidence comes in on any retrial, the instruction will again be factually appropriate.

CONCLUSION

The district judge erred by refusing to recuse in this case, and that error violated Myoun L. Sawyer's due process rights. The decision of the Court of Appeals affirming the district court is reversed; the judgment of the district court is reversed; and the case is remanded to the district court for further proceedings.

\* \* \*

MORITZ, J., dissenting in part: I agree with the majority that the district court gave a proper permissive inference instruction and that Sawyer failed to prove that Judge McNally had a statutory obligation to recuse under the applicable statute, K.S.A. 20-311d. But I diverge from the majority's decision when it continues what I consider to be the unsound practice of equating circumstances that raise a concern under the Kansas Code of Judicial Conduct, Supreme Court Rule 6.01B (2012 Kan. Ct. R. Annot. 713) or K.S.A. 20-311d with the far more "extreme" and "rare" circumstances in which the Due Process Clause requires recusal. See *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 887-88, 890, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009). Specifically, I depart from the majority's conclusion that Judge McNally's ambiguous statement regarding an unspecified "problem" that generated his recusal in a prior case permitted a presumption of constitutional bias in the present case. Instead, based on the limited facts presented to us, I would hold that this proceeding did not sink "beneath the 'constitutional floor.' " See *Caperton*, 556 U.S. at 889.

Before discussing my specific area of disagreement, I first applaud the majority's effort to clarify this court's "muddle[d]" caselaw on recusals and its delineation of the three independent bases for judicial recusal: (1) the Code of Judicial Conduct; (2) the statutory basis, K.S.A. 20-311d; and (3) the constitutional basis, the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

But while the majority eloquently articulates the three pathways to recusal, it then commits the same mistake previously made by this court when it elevates Judge McNally's comment recognizing a "problem" to the level of a constitutional violation. Contrary to

the majority's conclusion, Judge McNally did not admit previous bias. Rather, he simply acknowledged that based on "past dealings" with Sawyer, he found it a "problem" to sit in judgment of Sawyer.

Further, the majority missteps when it places responsibility on Judge McNally to "[dispel] any worry about bias." Historically, the onus is not on the judge to dispel concern about bias. Rather, courts presume judges act fairly and impartially, and litigants must present facts or circumstances indicating otherwise. See, *e.g.*, *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); *In re Larson*, 43 F.3d 410, 414 (8th Cir. 1994); *State v. Allen*, 322 Wis. 2d 372, 492, 778 N.W.2d 863 (2010) (Ziegler, J., concurring).

Significantly, the defendant failed to detail the "past dealings" and "past communication" that led Judge McNally to recuse in the prior case. Logically, some of the "past dealings" referred to by Judge McNally during the recusal hearing included Judge Mc-Nally's prohibition on Sawyer filing pro se pleadings and his order requiring Sawyer to be transported with a gag in place. However, as the majority recognizes, these actions, while extreme, are not "inevitably unjustified." Nor do they evidence obvious or actual bias. Similarly, the Court of Appeals' admonition to Judge McNally in a prior case regarding his response to Sawyer's outbursts during a sentencing hearing implicate a potential appearance of impropriety—*i.e.*, a problem under the Code of Judicial Conduct, not under the Constitution. See *State v. Sawyer*, No. 101,062, 2009 WL 4639488, at *4 (Kan. App. 2009) (unpublished opinion) (citing Rule 601A, Canon 3B[4], [2005 Kan. Ct. R. Annot. 562]), *rev. denied* 290 Kan. 1102 (2010).

Although Judge McNally's use of the term "problem" may have been inartful, I would not presume Judge McNally intended to admit bias. Instead, it seems likely the "problem" Judge McNally referred to was an appearance of impropriety requiring recusal under the Code of Judicial Conduct or an acknowledgement that, as discussed in K.S.A. 20-311d(c)(5), Sawyer previously had "cause to believe" that Judge McNally's bias would prevent Sawyer from getting a fair trial.

In elevating Judge McNally's unspecified "problem" to the level of a constitutional violation, the majority suggests the United States

Supreme Court recognized in *Caperton* that "a mere heightened risk of actual bias could lead to unacceptable peril to due process." Slip op. at 12. But contrary to the majority's characterization, the *Caperton* Court recognized that only an "extreme" risk of bias could offend the Due Process Clause. See *Caperton*, 556 U.S. at 887 (noting that in past cases the Supreme Court "was careful to distinguish the extreme facts of the case before it from those interests that would not rise to a constitutional level").

This crucial distinction is best illustrated by comparing the facts of this case with circumstances which have been held *not to* create an impermissibly high probability of actual bias. See, *e.g.*, *Davis v. Jones*, 506 F.3d 1325, 1336-37 (11th Cir. 2007) (concluding due process not implicated when judge and prosecuting attorney were brothers); *Reichert v. State ex rel. McCulloch*, 365 Mont. 92, 110-11, 278 P.3d 455 (2012) (determining due process did not require nonretiring justices to recuse when court considered constitutionality of change in judicial election); *Ivey v. Eighth Judicial Dist. Court*, 299 P.3d 354, 357-58 (Nev. 2013) (holding trial judge not required to recuse under the Due Process Clause when one party to pending divorce contributed single largest individual sum to judge's reelection campaign). As these cases evidence, the constitutional floor is indeed a low one. The majority raises the constitutional floor well above that contemplated in *Caperton* by interpreting Judge McNally's ambiguous comment as evidence of previous bias and by requiring Judge McNally to satisfy this court that any concern of bias has dissipated.

Finally, I wish to clarify that although I do not believe a constitutional violation has been established here, I do not agree with the Court of Appeals' suggestion that a trial judge's duty to recuse may vary based on whether a case is tried to the jury or the judge. As the majority here recognizes, the trial judge must make many rulings affecting the defendant's ability to obtain a fair trial, including sentencing the defendant, regardless of whether the case is tried to the jury or to the judge.

In conclusion, while I share the majority's concern with ensuring Sawyer received a trial from a fair and impartial judge, I disagree with the majority's continued blurring of the lines between a

judge's ethical obligation to recuse, a judge's statutory requirement to recuse, and a judge's compulsion under the Due Process Clause to recuse. I would find that this case does not present the rare and extraordinary case in which the Due Process Clause requires recusal.

BILES, J., joins in the foregoing dissent.