NOT DESIGNATED FOR PUBLICATION

No. 120,140

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOSEPH L. WHITTKER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed April 24, 2020.
Affirmed.

*Mark Sevart*, of Derby, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.


PER CURIAM: Joseph L. Whittker appeals from the district court's denial of his K.S.A. 60-1507 motion without conducting an evidentiary hearing. The motion was based on multiple claims of ineffective assistance of trial and appellate counsel, as well as claims of prosecutorial error and judicial error. Whittker also appeals the denial of his motion requesting a change in judge to handle his 60-1507 motion. After reviewing the motions, files, and records of the case, we affirm the district court's decision denying Whittker's motion.

1

In 2011, a jury found Whittker guilty of one count each of criminal discharge of a firearm at an occupied vehicle and criminal possession of a firearm. Sedgwick County District Court Judge Jeffrey Syrios presided over the trial. Judge Syrios sentenced Whittker to a controlling prison sentence of 233 months. Whittker filed a direct appeal and another panel of this court affirmed his convictions in May 2014. *State v. Whittker*, No. 107,627, 2014 WL 2400424 (Kan. App. 2014) (unpublished opinion), *cert. denied* 136 S. Ct. 1172 (2016).

Whittker filed a timely pro se motion for habeas relief under K.S.A. 2016 Supp. 60-1507 in December 2016, raising several ineffective assistance claims, as well as claims of prosecutorial and judicial misconduct. Relevant to this appeal, Whittker asserted ineffective assistance claims against his trial counsel, Mark Rudy. Whittker attached a memorandum of law in support of the motion, detailing his arguments and including several supporting exhibits.

About three weeks later, Whittker filed a pro se motion for change of judge under K.S.A. 20-311d, asserting that he was "prepared to submit an affidavit in support of this motion . . . if the court is not inclined to recuse himself."

Judge Syrios issued an order denying Whittker's 60-1507 motion: "[p]ursuant to K.S.A. 60-1507(f), movant's pleading is filed out of time. Additionally, petitioner does not plead, nor does the court find manifest injustice. Therefore, the court does not extend the time limitation for bringing an action under K.S.A 60-1507." Because of that ruling, Judge Syrios also denied Whittker's motion for change of judge as moot.

After Whittker timely moved to alter or amend the judgment, explaining that his 60-1507 motion was filed within a year of the United States Supreme Court's denial of

writ for certiorari, Judge Syrios issued an order reinstating both motions. The same day, Judge Syrios issued an order summarily denying Whittker's motion for a change of judge.

Whittker filed a pro se motion to reconsider, addressed to Chief Judge James Fleetwood. He attached a 14-page affidavit to the motion, generally reiterating his ineffective assistance claims from the 60-1507 motion and asserting the district court erred by failing to treat all of his pro se posttrial motions as motions for ineffective assistance. The penultimate paragraph of the affidavit stated: "In regards to K.S.A. 20-311d(a), I am moving for a change of judge and submit my affidavit in support of my petition to K.S.A. 20-311d(b) if judge Jeffrey Syrios is not inclined to recuse himself." The court denied the motion in a motion minutes sheet signed by Chief Judge James Fleetwood, which provided: "After reviewing the file, record and transcripts of this case the court finds that the movant's request is not supported and is therefore denied. There is nothing supporting any suggestion of bias or hostility toward the movant. Judge Syrios will hear all further proceedings in this case."

Two days later, Chief Judge Fleetwood received a letter from Whittker again requesting that the court reassign his case to a different judge. He included a copy of his previous motion for change of judge, a slightly modified affidavit in support, and a copy of a letter from Chief Judge Fleetwood from December 2016 that advised Whittker his case was assigned to Judge Syrios. Six days later, Chief Judge Fleetwood denied the request as moot because he had already decided it.

Over the course of the next 15 months, the district court appointed three attorneys at Whittker's request, leading to several continuances for the nonevidentiary hearing on his 60-1507 motion. Ultimately, in April 2018, the court issued a memorandum order summarily denying his motion. The order generally found that Whittker failed to show he was entitled to an evidentiary hearing on any of his claims and that he failed to meet the burden to establish ineffective assistance of trial or appellate counsel.

3

Shortly after the district court filed that order, Whittker filed a pro se motion objecting "to th[e] court's inaccurate, incomplete and insufficient finding of facts pursuant to K.S.A. 60-252(b)" and asking the court to make additional findings or "direct the entry of a new judgment pursuant to K.S.A. 60-259(a)(2)." He also asked the court to appoint substitute counsel due to the denied motion for ineffective assistance of his then counsel.

One week later, Whittker then filed a pro se notice of appeal.

ANALYSIS

*The district court did not err in denying Whittker's motion for change of judge.*

Whittker argues first that Judge Syrios should have recused himself from handling the 60-1507 motion because Whittker believed Judge Syrios' handling of his previous motions at trial showed bias and an unwillingness to conduct a fair and independent review of the motion. In response, the State contends that Whittker failed to follow the procedure outlined in K.S.A. 20-311d to warrant a change of judge. Alternatively, the State asserts Whittker failed to point to any evidence that shows actual bias toward him from Judge Syrios. Our review of this issue is unlimited. See *State v. Moyer*, 306 Kan. 342, 369-70, 410 P.3d 71 (2017).

There are at least three possible bases for a litigant to seek recusal of a district court judge in Kansas: (1) the statutory factors for change of judge as explained in K.S.A. 20-311d(c); (2) the standards in the Kansas Code of Judicial Conduct; and (3) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. 306 Kan. at 370; see generally Kansas Code of Judicial Conduct, Supreme Court Rule 601B (2020 Kan. S. Ct. R. 439) (canons, rules, and comments guiding judge's conduct after March 1, 2009). As the Kansas Supreme Court recognized in *Sawyer*, the "ceiling" for

recusal claims starts at the "'common law, statutes, or the professional standards of the bench and bar.'" *State v. Sawyer*, 297 Kan. 902, 906, 305 P.3d 608 (2013). Meanwhile, the Due Process Clause serves as the "'constitutional floor,'" so the proper analysis is to first consider the statutory framework and the Code of Judicial Conduct before resorting to a constitutional analysis. 297 Kan. at 906-07.

A litigant who believes that the judge assigned to their case "cannot afford that party a fair trial" must first move for a change of judge but "[t]he motion shall not state the grounds" warranting a recusal. K.S.A. 20-311d(a). If the judge denies the motion, "then the party must immediately file a legally sufficient affidavit alleging grounds set forth in the statute." 297 Kan. at 908. The statutory grounds a litigant may allege are

"(1) The judge has been engaged as counsel in the action prior to the appointment or election as judge.

"(2) The judge is otherwise interested in the action.

"(3) The judge is related to either party to the action.

"(4) The judge is a material witness in the action.

"(5) The party or the party's attorney filing the affidavit has cause to believe and does believe that on account of the personal bias, prejudice or interest of the judge such party cannot obtain a fair and impartial trial or fair and impartial enforcement of post-judgment remedies. Such affidavit shall state the facts and the reasons for the belief that bias, prejudice or an interest exists." K.S.A. 20-311d(c).

The statute also provides that "the recital of previous rulings or decision by the judge on legal issues . . . shall not be deemed legally sufficient for any belief that bias or prejudice exists." K.S.A. 20-311d(d). Appellate courts also review de novo the legal sufficiency of the affidavit in support of a motion for change of judge and will not decide the truth of the facts alleged. See *Moyer*, 306 Kan. at 371.

The Kansas Code of Judicial Conduct likewise provides a judge must recuse themselves "in any proceeding in which the judge's impartiality might reasonably be questioned," subject to a nonexhaustive list of circumstances. Kansas Supreme Court Rule 601B, Canon 2, Rule 2.11 (2020 Kan. S. Ct. R. 454). Whittker correctly notes that under either the statutory framework or the Kansas Code of Judicial Conduct, appellate review of claims of judicial bias or prejudice are based on an objective standard—"'not in the mind of the court itself, or even necessarily in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances.'" *Moyer*, 306 Kan. at 371 (quoting *Sawyer*, 297 Kan. at 908.)

On this point, the State first asserts Whittker ignored the statutory framework by failing to file an affidavit after Judge Syrios denied his motion for recusal. See *Moyer*, 306 Kan. at 372 (affirming denial of recusal motion, calling the affidavit "a piece that is critical to an effective appellate review"). But the State ignores or overlooks Whittker's motion for reconsideration addressed to Chief Judge Fleetwood that included an affidavit supporting the motion. That said, Whittker's affidavit lacked a legal basis for recusal.

Put simply, the supporting affidavit is not legally sufficient because the only basis alleged for Whittker's claim of judicial bias or prejudice was essentially a recitation of adverse rulings made by Judge Syrios during prior proceedings. Previous rulings by a judge are insufficient standing alone to require recusal. K.S.A. 20-311d(d); see also *State v. Dunn*, 243 Kan. 414, 437, 758 P.2d 718 (1988) ("We have long held that previous rulings of a trial judge are subject to correction on appeal and may not form a basis for recusal.").

Moreover, Whittker's assertions in the affidavit seem to be nearly identical to the judicial misconduct argument made in his 60-1507 motion that the district court erred by mishandling and denying his pro se motions for new trial based on allegations of ineffective assistance and failing to appoint conflict-free counsel. As implicitly

6

recognized in *Dunn*, these alleged errors are more appropriately addressed by pursuing their correction on appeal, not as a ground to establish bias or prejudice against a defendant that requires a judge's disqualification from a case.

Whittker also contends that Judge Syrios' recusal was required under the Due Process Clause of the Fourteenth Amendment. For a constitutional claim, recusal is required "when the judge is actually biased or there is a constitutionally intolerable probability of actual bias." *State v. Hurd*, 298 Kan. 555, 570, 316 P.3d 696 (2013). Kansas courts have used a two-part test to determine whether a defendant is entitled to reversal of his or her conviction because of a judge's failure to recuse: first, determining whether the judge had a duty to recuse because of bias, prejudice, or lack of impartiality, and then examining whether the failure to recuse caused actual bias or prejudice. *Moyer*, 306 Kan. at 375-76 (citing *Sawyer*, 297 Kan. at 909).

As the Kansas Supreme Court noted in *Moyer*, the viability of this two-part test is questionable "given the conflation of the bases for recusal." 306 Kan. at 376. All the same, the *Moyer* court applied the two-part test and referenced the four nonexclusive categories identified in *Sawyer* that would establish a due process violation:

> "as an objective matter, recusal would be required in order to satisfy due process: when a judge has a direct, personal, substantial pecuniary interest in the case; when a judge has an indirect financial interest in the case's outcome; when a judge issues a contempt citation in one case and proceeds to try the contempt citation; and, in rare instances, when a litigant donates to a judge's campaign for office." *Sawyer*, 297 Kan. at 909.

As in *Moyer*, Whittker does not allege any circumstances that would fit within these categories, nor does he provide any authority to establish that Judge Syrios had a duty to recuse from hearing his 60-1507 motion simply because of his prior adverse rulings. Without a duty to recuse, one cannot reasonably conclude that failure to do so led to any actual bias or prejudice.

7

In sum, the district court judge correctly declined to recuse here.

*The district court did not err in summarily denying Whittker's K.S.A. 60-1507 motion.*

Whittker argues that the district court should have granted him an evidentiary hearing on his 60-1507 motion and, alternatively, that he is entitled to a new trial based on the claims asserted. In his motion, Whittker raised several allegations of ineffective assistance related to actions by his trial and appellate counsel, none of which the district court found were supported by the record.

As the State points out, Whittker's appellate brief only brings forward some of these claims. Of the claims raised in his motion, Whittker's brief only mentions four claims related to Rudy's performance and one claim related to his appellate counsel's performance. Then, he only argues that he was entitled to an evidentiary hearing on three of those claims, limited to Rudy's alleged deficient representation. Last, Whittker asserts only that his complaints of Rudy being unprepared for trial entitle him to a new trial.

Appellate courts routinely hold that issues not adequately briefed as waived or abandoned. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019). Similarly, we also consider a point raised incidentally in a brief and not argued in it as abandoned. *State v. Lowery*, 308 Kan. 1183, 1231, 427 P.3d 865 (2018). Whittker has waived or abandoned most of his ineffective assistance claims by failing to brief them properly.

That said, we need only decide whether Whittker has shown he was entitled to an evidentiary hearing on three claims, all related to Rudy's alleged ineffectiveness in failing to (1) challenge an alleged relationship between a juror and the prosecutor; (2) investigate a certain witness; and (3) submit his own jury instructions to the court rather than agreeing to the State's proposed instructions. Whittker has abandoned any further challenge to the claims not raised, mentioned, or argued in his brief.

Because the district court summarily denied Whittker's K.S.A. 60-1507 motion, this court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that Whittker is not entitled to relief. See *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). Whittker has the burden to show that his motion warrants an evidentiary hearing. *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 (2011).

The district court must hold an evidentiary hearing on a 60-1507 motion and make findings of fact and conclusions of law with respect to it, unless the motion and the files and records of the case conclusively show the movant has no right to relief. K.S.A. 2018 Supp. 60-1507(b); Supreme Court Rule 183(f) and (j) (2020 Kan. S. Ct. R. 223).

To avoid the summary denial of a motion brought under K.S.A. 2018 Supp. 60-1507, a movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, a movant's contentions must be more than conclusory, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. If the movant makes such a showing, the court must hold a hearing unless the motion is a "'second'" or "'successive'" motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014) (quoting *Holmes*, 292 Kan. at 274).

As for the ineffective assistance claims, Whittker relies on *State v. Holmes*, 278 Kan. 603, 629, 102 P.3d 406 (2004). In *Holmes*, the Kansas Supreme Court recognized that

> "[i]t is erroneous to deny a 60-1507 motion without an evidentiary hearing where the motion alleges facts which do not appear in the original record, which if true would entitle the movant to relief, and it identifies readily available witnesses whose testimony would support such facts or other sources of evidence. The motion must set forth a

9

factual background, names of witnesses, or other sources of evidence demonstrating movant's entitlement to relief. [Citations omitted.]" 278 Kan. at 629.

To resolve ineffective assistance claims, Kansas courts ordinarily use the following analysis:

"To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales*, [300 Kan. at 882] (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984])." *Salary*, 309 Kan. at 483.

In determining whether counsel's performance was deficient, the movant must show:

"'[C]ounsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Betancourt*, 301 Kan. 282, 306, 342 P.3d 916 (2015) (quoting *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 [1985]).

Thus, to show that he was entitled to an evidentiary hearing, Whittker needed to allege facts in his motion that, if true, would establish (1) that Rudy's performance fell below an objective standard of reasonableness, and, if so, (2) that he was prejudiced by that deficient performance.

10

*Whittker fails to meet his burden regarding trial counsel's failure to remove a juror.*

Whittker's first claim is that Rudy was ineffective for failing to remove a juror at his request. He asserted in the motion that T.J.—the juror—and the prosecutor admitted on the record they knew each other from attending the same church and that Rudy ignored Whittker's request to remove T.J. from the panel.

Whittker relies solely on these conclusory assertions to support his claim. Yet a review of the record directly contradicts his assertions. The trial transcript shows when the prosecutor first asked during voir dire if any of the jurors knew him, the only juror who spoke up was one who had testified in a previous case. In fact, T.J. answered multiple questions but never conveyed she knew the prosecutor. When asked later if anyone knew him "from work, school, church, et cetera," none of the jurors responded in the affirmative. The transcript shows Whittker was present when the parties began exercising their peremptory strikes, but nothing suggests Whittker asked Rudy to remove *any* juror or that Rudy ignored any such request.

Even if we assume, without finding, that such a relationship existed, that Whittker voiced his objections, and that Rudy erred by ignoring a request to remove T.J. from the panel, Whittker fails to show any prejudice. Instead, he simply asserts the district court needed to hold an evidentiary hearing so that he could more fully present his allegations. Whittker bears the burden of showing a reasonable probability the jury would have reached a different result without the error. To meet that burden, Whittker must show that his trial counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by that deficient performance. See *Sola-Morales*, 300 Kan. at 882. Because Whittker fails to allege or set forth any facts to support a finding that he was prejudiced by T.J. remaining on the jury, his claim fails.

11

*Whittker shows no error in trial counsel's preparation for trial.*

Whittker's second and third claims are closely related because they both argue that his trial counsel was unprepared for trial, by failing to investigate certain witnesses or independently preparing jury instructions. Whittker asserted in his motion that Rudy tried to get Whittker to enter a guilty plea and failed to contact his previous counsel for information related to a potential alibi witness. As support, Whittker references his request five days before trial to have Rudy withdrawn as counsel and an affidavit purportedly from the alibi witness. As for the alleged error in failing to prepare jury instructions, Whittker asserted that Rudy's decision not to oppose the State's proposed jury instructions "demonstrates that Mr. Rudy was ineffective and establishes his unpreparedness and could not serve any strategic purpose."

Again, Whittker's assertions are conclusory and without support in the record. Copies of letters included with Whittker's motion show that Rudy requested a list of witnesses Whittker wanted to call in September 2011. In subsequent letters, Whittker acknowledged the request but offered no such witnesses. The only mention of potential alibi witnesses in those letters occurred in one dated February 13, 2012—nearly four months after Whittker's conviction—and in the context of discussing an aggravated battery charge in a separate case. Related to Whittker's assertion that Rudy prepared no jury instructions, he alleged no facts in his motion that are unavailable in the record.

Even if this court assumes error, again the issue comes down to Whittker's failure to show how Rudy's trial decisions fell below an objective standard of reasonableness. Likewise, Whittker failed to demonstrate any resulting prejudice. A review of the record establishes that Rudy provided reasonable representation, despite Whittker's repeated conclusory statements to the contrary.

In sum, the district court correctly denied Whittker's claim of ineffective assistance of counsel without conducting an evidentiary hearing. For these reasons, we affirm the trial court's well-reasoned decision.

Affirmed.