NOT DESIGNATED FOR PUBLICATION

No. 123,633

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of S.G.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Rooks District Court; BLAKE A. BITTEL, judge. Opinion filed February 25, 2022. Affirmed.

*Richard Boeckman*, of Boeckman Law Office, of Great Bend, for appellant natural father.

*David J. Basgall*, of Hays, for appellee.

Before ATCHESON, P.J., HILL and GARDNER, JJ.

PER CURIAM: A.G. (Father) appeals the district court's decision terminating his rights to parent S.G., his daughter. The district court found S.G. to be a child in need of care (CINC) after law enforcement officers found S.G.'s mother deceased and lying next to Father, who appeared to be suffering from self-inflicted wounds. A jury later convicted Father of Mother's first-degree murder, and the State moved to terminate Father's parental rights based on the statutory presumption of unfitness flowing from that conviction. Before the termination of parental rights (TPR) proceeding, Father filed several unsuccessful motions or objections. He moved the district court judge to recuse himself from the TPR case because he had presided over Father's criminal case; he moved the district court to stay the TPR proceeding until Father exhausted his criminal appeals; and he objected to holding the hearing by Zoom, asserting that this would violate his due process rights. He also argued that Ellis County was an improper venue. The district court

1

denied Father's motions, overruled his objections, and terminated his parental rights. Father appeals but finding no error, we affirm.

*Factual and Procedural Background*

The State filed a child in need of care petition on behalf of S.G. in March 2018. The State filed the petition after law enforcement officers found Mother deceased and Father lying next to her with self-inflicted wounds. Because the State suspected Father had killed Mother, law enforcement officers arrested Father. It is unknown whether S.G., the two and one-half year old daughter of Mother and Father, witnessed the event, but the district court placed her in the custody of the Department for Children and Families (DCF) after Father's arrest.

Many motions were filed by various parties about S.G.'s placement. The district court held an adjudication hearing in July 2018, found Father had stipulated no contest to the petition, and ordered S.G. to remain in DCF custody. The court later found that all parties waived venue and agreed the matter could be heard in Ellis County.

The district court also ordered Father to have no visitation with S.G. After the adjudication hearing, Father petitioned the district court to allow S.G. to be reintegrated with him once his criminal case was over. Father argued once a jury acquitted him of his first-degree murder charges, the United States would likely deport him and that S.G.'s interests would be best served by reintegrating with Father and living in Mexico with him.

In April 2019, Father's attorney moved to allow contact between Father and S.G., or in the alternative, to require a therapist to provide a plan for contact. In this motion, Father argued that, despite the presumption of innocence in his criminal case, the district court had treated him as though he were guilty of murdering S.G.'s mother. He also

argued that by denying his visitation requests, the district court blocked Father's ability to work on a plan of reintegration and to maintain a relationship with S.G.

After the district court held a permanency hearing in August 2019, it found reintegration was not a viable goal, adoption was a viable goal, and S.G. was in a stable relationship with a blood relative.

In December 2019, a jury convicted Father of first-degree murder of S.G.'s mother in the Rooks County criminal case. District Judge Blake A. Bittel presided over Father's criminal trial and sentenced him to a "hard 50" sentence of imprisonment in January 2020.

The next month, on February 28, 2020, the State moved to terminate Father's parental rights. In addition to several unfitness factors, the State alleged a statutory presumption of unfitness applied because of Father's first-degree murder conviction, referencing K.S.A. 2020 Supp. 38-2269(b)(1), (2), (4), and (5); and K.S.A. 2020 Supp. 38-2271(a)(7). The motion also informed Father of his burden to rebut the statutory presumption of unfitness.

Before the termination hearing, Father moved for a change of judge, arguing Judge Bittel could not be impartial in Father's TPR proceedings. Judge Bittel denied Father's motion. Father then filed an affidavit with Chief Judge Glenn R. Braun. Judge Braun affirmed Judge Bittel's order denying Father's motion, finding Father's allegations legally insufficient under the statute to require a judge's recusal.

Father's TPR proceedings thus continued with Judge Bittel. He limited Father's evidence at the termination hearing to showing his ability to parent from prison and scheduled the matter to be conducted by Zoom.

Father moved the district court to stay the TPR proceedings until his criminal appeal was concluded. The district court denied Father's motion.

Father then objected to having his trial heard over Zoom and "in" Ellis County. Father argued a Zoom videoconference hearing would violate his due process rights. Father also objected to venue, arguing that there was no motion to change venue or any order regarding a transfer of venue on file, so by holding the hearing "in" Ellis County, venue was improper.

The district court held the TPR hearing by Zoom in September 2020. Father asserted he wanted his attorney and interpreter to be present in person with him and that venue was proper in Rooks County. Father also moved for a continuance to accommodate his requests. The district court denied Father's motion, finding: (1) the issue had been discussed in the second pretrial; (2) issues with COVID-19 quarantining and housing prompted the Zoom videoconference decision; and (3) Father could enter a "breakout room" with his attorney and interpreter to discuss issues or questions at any time.

During the Zoom TPR hearing, the State offered a certified copy of the journal entry of Father's jury trial and sentencing. Father generally objected to the exhibit based on "notice, foundation, hearsay, [and] relevancy." The district court overruled Father's objections and admitted State's Exhibit 1, a verified copy of the Journal Entry of Jury Trial and the Kansas Sentencing Guidelines Journal Entry of Judgment. The court found that Father had been convicted of first-degree murder, so he was presumed unfit under K.S.A. 60-414(a)(1) and K.S.A. 2020 Supp. 38-2271(a)(7) (presuming a parent unfit when the state establishes by clear and convincing evidence that the parent has been convicted of capital murder, and the victim of the murder was the child's other parent). The court then informed Father that the burden shifted to him to rebut that presumption by a preponderance of the evidence showing he was either presently fit or would be fit in the foreseeable future.

4

Father requested time to confer with his attorney, which the district court allowed. The district court placed Father, his attorney, and his interpreter in a private videoconference meeting until Father was ready to return to the hearing. Upon returning, Father's attorney asked whether Father could receive a recording of the videoconference hearing, and the district court assured Father that he could.

Father then testified that he loved his daughter but admitted that he was presently unfit to care for S.G. Still, emphasizing his innocence in the murder conviction, he insisted he would be fit in the foreseeable future and asked the district court not to decide the TPR issue until his criminal appeal was final. The district court found that Father failed to meet his burden to prove by a preponderance of the evidence that he was either presently fit to care for his child, or that he would be in the foreseeable future. The district court also found, after considering the physical, mental and emotional health of S.G., that termination of Father's parental rights was in S.G.'s best interests. Based on that finding, the district court terminated Father's parental rights.

Father appeals.

*Does this Court Lack Jurisdiction?*

We first address Father's argument that the district court erred by not staying the TPR proceedings until after his criminal appeal was decided, and that this error somehow deprives this court of jurisdiction. We do not follow Father's jurisdictional argument, see generally *Harsch v. Miller*, 288 Kan. 280, 290, 200 P.3d 467 (2009) (discussing effect of denial of stay on jurisdiction), but we need not reach it because we find no error in denying a stay.

Although Father concedes that *In re M.E.B.*, 29 Kan. App. 2d 687, 691, 29 P.3d 471 (2001), likely controls this question, he suggests that this case was wrongly decided.

5

But Father's analysis on this point is scant and undeveloped. Issues raised only incidentally and not argued are considered abandoned. *National Bank of Andover v. Kansas Bankers Surety Co.,* 290 Kan. 247, Syl. ¶ 18, 225 P.3d 707 (2010).

In *M.E.B.*, the trial court terminated father's parental rights based on father's presumed unfitness because he had murdered M.E.B.'s mother. Father's appeal contended that the trial court erred in terminating his parental rights based on his murder conviction because his appeal of that conviction had not yet been decided. A panel of this court disagreed, finding that for purposes of the statutory presumption of K.S.A. 38-1585(a)(7) (since repealed), now K.S.A. 2020 Supp. 38-2271(a)(7), Father was "'convicted' upon the entry of the judgment of conviction following the jury's guilty verdict." 29 Kan. App. 2d at 691.

*M.E.B.* recognized that "conviction" is not defined in the Kansas Code for Care of Children, K.S.A. 38-1501 et seq. (since repealed), now K.S.A. 2020 Supp. 38-2201 et seq. So it analyzed the rationale of other states that had considered when a conviction may be used against a parent in a termination proceeding. It then analyzed the Code and found it "inconceivable that our legislature would intentionally provide that a child's stability and permanency must await the completion of the appeal process." 29 Kan. App. 2d at 691. *M.E.B.*'s analysis and conclusion are well reasoned and we find no reason to depart from it. The district court did not err by refusing to stay the termination proceedings until after Father's criminal appeal was decided.

*Did the District Court Err by Denying Father's Motion for a New Judge?*

Father next contends that the district court erred by denying his motion for the TPR judge, Judge Bittel, to recuse himself.

Father moved for a change of judge in March 2020, under K.S.A. 20-311d(a), generally asserting that Judge Bittel could not give him a fair trial. Although we have no transcript of the hearing, the record shows that Judge Bittel conducted a motions hearing, reviewed the file, and heard statements by the parties before denying Father's motion.

After the district court denied his motion, Father filed an affidavit under K.S.A. 20-311d(b) and (c), stating:

> "I feel Judge Bittel should not be the Judge in this case [be]cause he was the Judge in my criminal case and that would be [a] conflict [of] interest.
> "I feel what happened in my criminal case, he will use it to [sic] Judge me in this case [and] I will not receive a fair chance.
> "I also feel that Judge Bittel is a bad judge [and] I don't want him on this case because in my prior criminal case that he was the judge of, he continued my jury trial without even acknowledging the fact that during jury selection most of the potential jurors who were eventually chosen as jurors for my case, stated that they believed I was already guilty in response to questioning from my lawyer while attempting to find a fair jury, before even hearing my side of the events of the case in trial [and] the evidence of my case in my trial. As a good judge, he should've been aware of and considered information as important as this before resuming trial, to ensure that I received a fair trial, but he did not so I feel he is unfit to be the judge of this new case also. For being careless and inconsiderate of all aspects of my case."

Father thus alleged that Judge Bittel:

- had a conflict of interest because he had presided over Father's first-degree murder trial;
- would use the facts of his criminal case against him so Father would not receive a fair chance in his TPR proceedings;
- was a careless, inconsiderate, and bad judge; and

7

- should have disqualified several jurors who thought Father was guilty before hearing the evidence in Father's criminal trial.

Chief Judge Braun then reviewed the legal sufficiency of Father's affidavit, in accordance with K.S.A. 20-311d(b). He found that the facts alleged in Father's affidavit were legally insufficient to question the impartiality of Judge Bittel and affirmed Judge Bittel's denial of Father's motion.

Kansas law provides at least three substantive bases on which a litigant may argue that a judge's recusal is required: (1) the statutory factors set forth in K.S.A. 20-311d(c); (2) the standards of the Kansas Code of Judicial Conduct, Supreme Court Rule 601B, Canon 2, Rule 2.2 and 2.3 (2022 Kan. S. Ct. R. at 495); and (3) the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *State v. Moyer*, 306 Kan. 342, 370, 410 P.3d 71 (2017). Liberally construed, Father's brief argues all three of these bases.

Although Father's analysis on this issue is slim, Father argues that due process should have been considered, but it was not. Father "asserts that by complaining that Judge Bittel did not provide him a fair trial in the criminal case, that due process was implicated." But Father also asserts that the statutory factors and the Code of Judicial Conduct relating to bias and impartiality required recusal, and Father complied with the statutory procedure for seeking recusal. We thus begin with the non-constitutional framework, as analysis under the statutes and the Code of Judicial Conduct provisions may eliminate the need for constitutional analysis. *Moyer*, 306 Kan. at 370-71; *Butler v. Shawnee Mission School District Board of Education*, 314 Kan. 553, Syl., __ P.3d __, 2022 WL 68140 (No. 124,205, filed January 7, 2022) ("Constitutional avoidance is a long-standing doctrine of judicial procedure that strongly counsels against a court deciding a case on a constitutional question if the case can be resolved in some other fashion.").

*Statutory Basis for Recusal*

K.S.A. 20-311d(a) provides a statutory procedure for a party or a party's attorney to move for a change of judge based on the belief "that the judge to whom an action is assigned cannot afford that party a fair trial in the action." "Under K.S.A. 20-311d, a party must first file a motion for change of judge; if that motion is denied, then the party must immediately file a legally sufficient affidavit alleging grounds set forth in the statute." *State v. Sawyer*, 297 Kan. 902, 908, 305 P.3d 608 (2013). Father followed this procedure here.

When reviewing the legal sufficiency of an affidavit in support of a motion for a change of judge, this court has unlimited review. *State v. Robinson*, 293 Kan. 1002, 1032, 270 P.3d 1183 (2012).

> "'When faced with an affidavit of prejudice filed pursuant to K.S.A. 20-311d, this court has unlimited review, and on appeal *must decide the legal sufficiency of the affidavit and not the truth of the facts alleged*. [Citations omitted.] We examine whether the affidavit provides facts and reasons pertaining to the party or his or her attorney which, if true, give fair support for a well-grounded belief that he or she will not obtain a fair trial. [Citation omitted.] We determine whether the charges are grounded in facts that would create reasonable doubt concerning the court's impartiality, not in the mind of the court itself, or even necessarily in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances. [Citation omitted.]' *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 385, 22 P.3d 124 (2001)." (Emphasis added.) *Sawyer*, 297 Kan. at 908.

Father's affidavit states one specific instance of Judge Bittel's inaction—it alleges he should have disqualified several jurors in Father's criminal case who thought Father was guilty before hearing the evidence. But a court's disqualification of jurors for cause is a legal ruling, see generally *State v. Morrison*, 67 Kan. 144, 158-60, 72 P. 554 (1903),

9

and under the statute, a judge's previous unfavorable legal rulings are legally insufficient to require transfer. K.S.A. 20-311d(d). That is the case here.

Father's remaining allegations in his affidavit recite mere beliefs or opinions unsupported by specific facts showing bias, prejudice, or interest. But general allegations are not enough. *Niblock v. State*, 11 Kan. App. 2d 30, 31-32, 711 P.2d 771 (1985). These conclusory allegations are legally insufficient to warrant a change of judge. See K.S.A. 20-311d(c)(5); *State v. Logan*, 236 Kan. 79, 85, 689 P.2d 778 (1984). The district court correctly held that Father's affidavit was legally insufficient to show Judge Bittel could not afford Father a fair trial in his TPR proceedings.

*Kansas Code of Judicial Conduct Basis for Recusal*

Kansas Supreme Court Rule 601B, Canon 2 (2022 Kan. S. Ct. R. at 494), states that a "judge shall perform the duties of judicial office impartially, competently, and diligently." Rule 2.11 addresses disqualification:

> "A judge shall disqualify himself or herself in any proceeding in which the judge's *impartiality* might reasonably be questioned . . . :
>> "(1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal *knowledge* of facts that are in dispute in the proceeding." (2022 Kan. S. Ct. R. at 501).

The preamble to the Code of Judicial Conduct indicates that the purpose of the Code is to "establish[ ] standards for the ethical conduct of judges and judicial candidates." Rule 601B (2022 Kan. S. Ct. R. at 486). Its scope section admonishes that "[t]he Code is not designed or intended as a basis for civil or criminal liability" and that it is not "intended to be the basis for litigants to seek collateral remedies against each other or to obtain tactical advantages in proceedings before a court." (2022 Kan. S. Ct. R. at

10

487). We assume, without deciding, that the Code may provide a separate basis for recusal.

When a party alleges judicial bias, he or she must first show that the trial judge has a duty to recuse. Second, he or she must show actual bias or prejudice that warrants setting aside the decision. *Robinson*, 293 Kan. at 1032. "'Bias' refers to the judge's mental attitude toward a party to the lawsuit. Bias and prejudice exist if a judge harbors a 'hostile feeling or spirit of ill will against one of the litigants, or undue friendship or favoritism toward one. [Citation omitted].'" *State v. Reed*, 282 Kan. 272, 277, 144 P.3d 677 (2006). The exception to the actual bias requirement is that "bias or prejudice will be presumed when, based on objective standards, the probability of actual bias is too high to be constitutionally tolerable." *Robinson*, 293 Kan. at 1032. See, e.g., *Sawyer*, 297 Kan. at 911-12 (finding the probability of prejudice standard met when a judge had recused in Sawyer's assault and battery bench trial; then judge was admonished by appellate court for intemperate demeanor in Sawyer's intervening jury trial for lewd and lascivious behavior; yet judge refused to recuse in Sawyer's later bench trial).

A district court judge has a duty to recuse if "the judge's *impartiality* might reasonably be questioned, including . . . [when] [t]he judge has a personal bias or prejudice concerning a party or . . . personal *knowledge* of facts that are in dispute in the proceeding." Rule 601B, Canon 2, Rule 2.11(A)(1) (2022 Kan. S. Ct. R. at 501). But neither Father's affidavit nor Father's brief on appeal points out facts to support Father's conclusory allegations of impartiality or bias. And although Judge Bittel presided over Father's criminal jury trial, Father fails to show that he had personal knowledge of any facts in dispute in the TPR proceeding. That Father was convicted of first-degree murder is undisputed. And Father shows no other facts that Judge Bittel learned during the criminal trial that could weigh against Father in the TPR proceeding. We thus find that Judge Bittel had no duty to recuse. We also note that the record fails to show any actual or presumed prejudice.

*Due Process*

"Recusal is required under the Fourteenth Amendment's Due Process Clause when the judge is actually biased or there is a constitutionally intolerable probability of actual bias." *State v. Hurd*, 298 Kan. 555, 570, 316 P.3d 696 (2013) (citing *Sawyer*, 297 Kan. at 909).

As noted above, neither Father's affidavit nor his brief on appeal shows instances of Judge Bittel's hostility, spirit of ill will, or unfavorable attitudes to the parties as is necessary to show the judge's actual bias or prejudice. See *Reed*, 282 Kan. at 277-78. We cannot presume that just because Judge Bittel presided over Father's criminal trial he is necessarily prejudiced against Father in his TPR proceedings.

Nor does a realistic appraisal of psychological tendencies and human weakness show that any interest of Judge Bittel poses "'such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.' *Caperton*, 556 U.S. at 883-84." *Sawyer*, 297 Kan. at 910.

Father fails to show that the district court had a duty to recuse, that he suffered actual bias or prejudice, or that we must presume prejudice because the circumstances pose too high a probability of actual bias. We thus affirm the denial of Father's motion.

*Did the District Court Deprive Father of His Due Process Rights by Holding the Termination Hearing Using a Videoconference Application "in" Ellis County?*

Father next contends that the district court deprived him of his due process rights by holding the TPR hearing by Zoom, a videoconference application, with the judge seated in Ellis County.

12

*Due Process*

A violation of a parent's due process rights exists only if the parent "'establish[es] that he or she was denied a specific procedural protection to which he or she was entitled.'" *In re K.E.*, 294 Kan. 17, 22, 272 P.3d 28 (2012). A parent has a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution to make decisions regarding care, custody, and control of his or her child. Thus, before the State deprives a parent of that right, the parent is entitled to due process of law. *In re Adoption of A.A.T.*, 287 Kan. 590, 600-01, 196 P.3d 1180 (2008). This court has unlimited review of whether a district court violated an individual's right to due process. *In re K.E.*, 294 Kan. at 22.

*Adequate Notice to Father*

In TPR proceedings, the State must give adequate notice that a statutory presumption applies, and that the State intends to ask the district court to use that presumption. *In re K.R.*, 43 Kan. App. 2d 891, 899, 233 P.3d 746 (2010). See K.S.A. 2020 Supp. 38-2271. "[I]n proceedings of this nature, it is critical that the parent against whom a statutory presumption will be asserted have adequate notice of the assertion so that rebuttal evidence can be presented to the court." 43 Kan. App. 2d at 899. Here, the State specifically stated in its motion for unfitness and termination that it sought to enforce the statutory presumption. So procedural due process under the CINC code was satisfied.

*Videoconference Hearings*

Whether a hearing or trial by videoconference application like Zoom infringes on an individual's due process rights is a developing issue in Kansas. We find guidance in a recent decision by another panel of our court:

13

"A district court conducting child in need of care proceedings by videoconference, including a hearing on a motion to terminate parental rights, does not violate the due process rights of the participants so long as certain safeguards are present. These safeguards include adequate audio quality which allows all participants to hear the proceedings, the ability of participants to observe the witnesses, the ability of parties to access all exhibits, and the ability of parties to confer privately with their attorneys." *In re C.T.*, 61 Kan. App. 2d 218, Syl, 501 P.3d 899 (2021).

In *In re C.T.*, the panel reviewed recent caselaw from other jurisdictions to see what other states are doing to protect an individual's due process rights. The panel discussed the seriousness of the COVID-19 global pandemic, the health risks involved in meeting face-to-face, and the inability to view most of an individual's face if forced to testify while wearing a mask. Ultimately, the panel determined that the district court's decision to conduct the hearing through Zoom did not deprive Mother of her due process rights, so long as the district court afforded Mother some basic safeguards. Because Mother (1) could confer with her attorney privately; (2) had access to all admitted exhibits; (3) could observe the witnesses; and (4) could hear and be heard, the Zoom videoconference hearing was enough to protect her due process rights. 61 Kan. App. 2d at 233.

As a point of comparison, the Kansas Supreme Court Rules allow a district court to use interactive electronic means in conducting K.S.A. 60-1507 evidentiary hearings. See Rule 183(h) (2022 Kan. S. Ct. R. at 244); Rule 145 (2022 Kan. S. Ct. R. at 230); *Fischer v. State*, 296 Kan. 808, 824, 295 P.3d 560 (2013). Rule 145 states that the court may not use a telephone or other electronic conference to conduct a trial on the merits and that K.S.A. 2020 Supp. 60-243(a) applies. But that statute provides: "For good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." K.S.A. 2020 Supp. 60-243(a).

14

In Father's TPR proceeding, the district court took steps to ensure Father's ability to participate in the hearing. Addressing Father's attorney's motion to have the trial in person, the district court stated:

"Okay. And we've discussed this at the second pretrial. We had arranged a transport, and then there were several issues with regard to quarantine and housing, et cetera, that made the decision to change that to via Zoom for those reasons.

"And also, we also discussed that [Father] would have the right to go to a room, and that's why I wanted everybody by Zoom, because that would give [Father] and yourself and the interpreter the opportunity to actually meet via Zoom in a breakout room whenever requested by [Father], so he would have absolute access to you and the interpreter if he needed to."

And although the district court's audio may have been difficult to hear once, the district court was quick to fix that issue. When Father stated he could not hear the judge, the judge restarted:

"We discussed this at the second pretrial that there was—and I won't go through it all—but because of all of the complications with regard to COVID, quarantine, et cetera, transport, it was decided that [Father] will participate in a Zoom and not in person. And additionally, was it would make it easy for him to go into a breakout room if everyone was via Zoom, including his attorney and the interpreter, at any time to assist him that it was decided that the entire hearing would be via Zoom, and that would be beneficial.

"At any time during the hearing he can notify his attorney as we're sitting here via Zoom that he needs to—has a question or discuss, and at that time we will move [Father] and the interpreter into a breakout room until—and give them whatever time they need to discuss any questions or comments he has. Including, if there is testimony, we will take a break and his attorney and the interpreter and he will be able to meet in a breakout room and discuss any other topics or questions that he would like to be covered in his testimony."

The record shows that the district court ensured that Father had a meaningful opportunity to participate in the proceeding. The district court spoke up when the parties had audio quality issues, it ensured all participants could observe each other, and it made sure that Father, his attorney, and his interpreter could confer privately when Father requested. And Father does not complain that he lacked access to any admitted exhibits. Chief among them was the State's Exhibit 1—the journal entry of Father's conviction.

The district court analyzed and weighed the appropriate concerns about due process and made sure that the proper safeguards were in place for a fair and meaningful hearing. Thus, the Zoom videoconference hearing was sufficient to protect Father's due process rights.

*Venue*

Whether venue is proper is a question of law over which this court has unlimited review. *State v. Johnson*, 40 Kan. App. 2d 397, 399, 192 P.3d 661 (2008). Under K.S.A. 2020 Supp. 38-2203(c), a district court "acquires jurisdiction over a child by the filing of a petition pursuant to this code." Under K.S.A. 2020 Supp. 38-2204(a), "[v]enue of any case involving a [CINC] shall be in the county of the child's residence or in the county where the child is found." The CINC statute neither provides for nor prohibits a waiver of venue.

The State filed the CINC petition in Rooks County, where Father and S.G. then resided, so venue was proper. See K.S.A. 2020 Supp. 38-2204(a) (providing venue in CINC cases shall be in the county of the child's residence or in the county where the child is found). And as Father recognizes, the record shows no motion to change venue or any order transferring venue. Venue thus remained in Rooks County.

16

Still, the district court noted in its custody order following the adjudication hearing that the parties had waived venue and agreed to hear the CINC case in Ellis County. "[A]s a general rule, parties are free to waive venue because it is a procedural matter that relates to a litigant's convenience, rather than a jurisdictional issue." *Kansas City Grill Cleaners, LLC v. BBQ Cleaner*, 57 Kan. App. 2d 542, 547, 454 P.3d 608 (2019). The record on appeal shows that Father was transported several times from Rooks County to Ellis County after this hearing. And when Father later filed a notice of hearing for his motion to allow contact, he specifically stated that he had scheduled the hearing in Ellis County District Court because "venue [was] waived from Rooks County."

And in the TPR hearing, when Father's attorney argued that Father objected to a videoconference hearing and that the hearing should be held in person in Rooks County, the district court responded by stating these issues had been addressed in the second pretrial hearing. As noted above, the district court outlined the complications related to COVID-19, quarantine, and transport which led it to decide that Father would participate by Zoom and not in person.

Just because the presiding judge was seated in Ellis County, rather than in Rooks County, during the Zoom hearing does not change or transfer venue. Venue was proper in Rooks County when the CINC proceedings began, and venue was not transferred after that. And the record shows that Father agreed to hear the TPR proceedings in Ellis County, so Father was not surprised by that event. And Father fails to show that he suffered any detriment or prejudice because the judge was seated in Ellis County, rather than in Rooks County, during the Zoom TPR hearing. The district court did not err in holding the hearing in Ellis County, and its doing so did not create improper venue.

17

*Did the District Court Err by Terminating Father's Parental Rights?*

*Standard of Review*

A parent has a constitutionally recognized right to a parental relationship with his or her child. See *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). The right is a constitutionally protected liberty interest. See *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) (fundamental liberty interest). As a result, the State may terminate the legal bond between a parent and child only upon clear and convincing proof of parental unfitness. K.S.A. 2020 Supp. 38-2269(a); *Santosky*, 455 U.S. at 769-70; *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 1, 336 P.3d 903 (2014).

When the district court adjudicates a child to be in need of care, the court may terminate parental rights if the court finds by clear and convincing evidence that the parent is unfit "by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2020 Supp. 38-2269(a).

> "'[W]hen this court reviews a district court's termination of parental rights, we consider whether, after review of all the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parents' right should be terminated.' In making this determination, an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. [Citations omitted.]" *In re K.H.*, 56 Kan. App. 2d 1135, 1139, 444 P.3d 354 (2019).

The district court must also determine whether termination is in the child's best interests. See K.S.A. 2020 Supp. 38-2269(g)(1). This determination must be supported by a preponderance of the evidence, and this court reviews that determination for abuse of

discretion. An abuse of discretion occurs when no reasonable person would agree with the district court or the district court premised its decision on a factual or legal error. *In re R.S.*, 50 Kan. App. 2d at 1115-16.

*Termination of Parental Rights*

The Revised Kansas Code for Care of Children provides that a district court may terminate parental rights after the court adjudicates the child to be a CINC. K.S.A. 2020 Supp. 38-2269(a). The statute lists nonexclusive factors the court must consider in determining the parent's unfitness. K.S.A. 2020 Supp. 38-2269(b) and (c). Any one of the factors in K.S.A. 2020 Supp. 38-2269(b) or (c) may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2020 Supp. 38-2269(f). But under K.S.A. 2020 Supp. 38-2271(a)(7), the law presumes a parent unfit after the State shows by clear and convincing evidence that the parent has been convicted of first-degree murder and the victim of the murder was the other parent of the child.

The burden of proof then shifts to the parent to rebut the presumption of unfitness by a preponderance of the evidence. "In the absence of proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the court shall terminate parental rights." K.S.A. 2020 Supp. 38-2271(b).

Upon making a finding of unfitness of the parent, "the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 2020 Supp. 38-2269(g)(1). This remains so even if the district court relies on a statutory presumption. See *In re K.P.*, 44 Kan. App. 2d 316, 321, 235 P.3d 1255 (2010). In making the best interests decision, the court must mainly consider the physical, mental, and emotional needs of the child. K.S.A. 2020 Supp. 38-2269(g)(1).

19

*Application*

In the termination hearing, the district court admitted State's Exhibit 1—a copy of Father's journal entry of conviction for first-degree murder. The State thus met its burden to show by clear and convincing evidence that Father had been convicted of first-degree murder of the child's mother. That first-degree murder conviction triggered a presumption that Father was unfit. K.S.A. 2020 Supp. 38-2271(a)(7). The district court properly applied the statutory presumption of Father's unfitness based on Father's recent conviction.

It then became Father's burden to rebut the presumption by a preponderance of the evidence showing he was presently fit to care for S.G. or would be in the foreseeable future. See K.S.A. 2020 Supp. 38-2271(b). The district court found Father failed to rebut the presumption. The district court thus made a negative factual finding that Father failed to meet his burden of proof. See *In re P.H.*, No. 121,869, 2020 WL 3481530, at *13 (Kan. App. 2021) (unpublished opinion). A negative finding of fact occurs when the district court finds that the burdened party has failed to sustain its burden of proof. See *In re Marriage of Kuzanek*, 279 Kan. 156, 159, 105 P.3d 1253 (2005). This court reverses a negative finding of fact only if "the party challenging the finding proves arbitrary disregard of undisputed evidence, or some extrinsic consideration such as bias, passion, or prejudice." 279 Kan. at 160; see *In re Adoption of D.D.H.*, 39 Kan. App. 2d 831, 836, 184 P.3d 967 (2008); see also *In re Adoption of Baby Girl T.*, 28 Kan. App. 2d 712, 719-20, 21 P.3d 581 (2001) (applying negative finding analysis to child custody and parental rights).

On appeal, Father fails to argue that the district court arbitrarily disregarded undisputed evidence or that the district court's finding turned on some extrinsic consideration. See *In re P.H.*, 2020 WL 3481530, at *13. Because Father fails to argue

against the district court's negative factual findings, we consider the issue waived and abandoned. See *Lambert v. Peterson*, 309 Kan. 594, 598, 439 P.3d 317 (2019).

Still, even if we considered the merits of Father's position, he fails to show his fitness now or in the foreseeable future. In support of his position, Father suggests that his child is young, that he is innocent, and that at some point he will be released from custody. But these aspirations fail to show that Father is able to properly care for his child during his long stay in prison. Nor do they show that Father will be able to care for his daughter in the foreseeable future.

> "When assessing the foreseeable future, this court uses 'child time' as a measure. The Revised Kansas Code for Care of Children . . . recognizes that children experience the passage of time in a way that makes a month or a year seem considerably longer than it would for an adult, and that different perception typically points toward a prompt, permanent disposition. K.S.A. 2018 Supp. 38-2201(b)(4); *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) ("'child time'" differs from "'adult time'" in care proceedings 'in the sense that a year . . . reflects a much longer portion of a minor's life than an adult's')." *In re M.S.*, 56 Kan. App. 2d 1247, 1263-64, 447 P.3d 994 (2019).

Father thus failed to rebut the presumption that he is unfit and will be unfit for the foreseeable future.

We separately address whether the district court abused its discretion in finding that termination of Father's rights is in S.G.'s best interests. See *In re R.S.*, 50 Kan. App. 2d at 1116. In making this decision, the district court must primarily consider the child's physical, mental, or emotional health. K.S.A. 2020 Supp. 38-2269(g)(1). And under K.S.A. 2020 Supp. 38-2269(h), when, as here, a parent is convicted of first-degree murder of the child's other parent, the district court may disregard the convicted parent's

21

wishes or opinion on placement of the child. The district court could properly disregard Father's wishes about the child's placement.

Father fails to argue that the district court abused its discretion in making its best interests determination. He merely reiterates his hopes to have his conviction overturned. As a result, we have no basis to set aside the district court's best interests finding. And our review of the record shows that the district court did not abuse its discretion. See *In re R.S.*, 50 Kan. App. 2d at 1115-16.

Affirmed.