NOT DESIGNATED FOR PUBLICATION

No. 124,289

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STEPHEN ALAN MACOMBER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Opinion filed August 5, 2022. Affirmed.

*Shawna R. Miller*, of Miller Law Office, LLC, of Holton, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., ATCHESON and ISHERWOOD, JJ.

PER CURIAM: On June 7, 2010, Stephen Alan Macomber killed a man in Topeka, fled to Marshall County where he shot a sheriff's deputy, drove off in the deputy's patrol vehicle, and took a hostage in Blue Rapids before eventually surrendering. As a result of his crimes, Macomber is in the custody of the Kansas Department of Corrections. This appeal arises out of a K.S.A. 60-1507 motion filed by Macomber in Shawnee County.

On appeal, Macomber contends that the district court erred in denying his motion seeking to disqualify the district court judge who presided over his criminal jury trial from ruling on his K.S.A. 60-1507 motion. He also contends that the district court erred

1

in summarily denying his K.S.A. 60-1507 motion. Based on our review of the record on appeal, we do not find that the district court erred in denying either of Macomber's motions. Thus, we affirm.

FACTS

The Kansas Supreme Court summarized the underlying facts related to Macomber's crime spree in *State v. Macomber*, 309 Kan. 907, 441 P.3d 479 (2019). In addition, the facts are summarized in *State v. Macomber*, No. 113,869, 2017 WL 2713209 (Kan. App. 2017) (unpublished opinion), *aff'd* 309 Kan. 907. Accordingly, because the parties are familiar with these facts, we will not repeat them in this opinion.

Ultimately, our Supreme Court affirmed Macomber's Shawnee County conviction for involuntary manslaughter. *Macomber*, 309 Kan. at 927. In doing so, three justices concurred in part and dissented in part. In the two-paragraph minority opinion, the dissenting justices stated that they "would hold that the State did not meet its burden to show that withholding an instruction on the presumption [that self-defense was necessary] was harmless . . . ." 309 Kan. at 928.

On the day the Kansas Supreme Court's decision was filed—Macomber's appellate counsel mailed him a letter informing him of the deadlines for filing a petition for writ of certiorari to the United States Supreme Court and for filing a K.S.A. 60-1507 motion. However, the letter did not mention the deadline for filing a Supreme Court Rule 7.06 (2019 Kan. S. Ct. R. at 50) motion for rehearing or modification. Counsel also indicated in the letter that filing a petition for writ of certiorari or a K.S.A. 60-1507 motion "are outside the scope of my representation of you as appointed counsel to handle your appeal." In addition, counsel stated "that my representation of you has concluded."

2

About two weeks later, Macomber filed a document entitled "Ex Parte Motion To Remove Counsel" with the Clerk of the Appellate Courts. In his motion, Macomber suggested that he was no longer represented by appellate counsel and that he wanted to file a Rule 7.06 motion for rehearing. Two days later, Macomber attempted to file his pro se Rule 7.06 motion. On the same day, Macomber's appellate counsel sent him another letter indicating that his representation would continue until his appeal had been completed and offered to assist him with the filing of a Rule 7.06 motion if he wanted him to do so.

Specifically, Macomber's appellate counsel explained:

"I am in receipt of your motion for removal of counsel post-marked May 30, 2019. As you know, pursuant to rule 7.06(a) a motion for rehearing/modification can be filed in this case by June 7, 2019. My statement of May 17, 2019 that my representation is completed was not absolute but conditional. My representation continues until the case is completed in the Supreme Court including ruling on any motion pursuant to 7.06(a).

"To date I haven't heard from you identifying any grounds which you believe exist for rehearing or modification. I am available between now and the deadline for such a motion to receive, review, and prepare such a motion pursuant to rule 7.06, including receiving a phone call from you to tell me everything you want to about the matter, including dictating to me your draft of such a motion. So that it can be filed timely by myself if grounds can be articulated for such relief. I will make myself available at any reasonable hour for that purpose (as early as 6:00 a.m. and as late as 8:00 p.m.)."

It does not appear from the record on appeal that Macomber ever asked his appellate counsel to assist him with drafting a Rule 7.06 motion.

On June 10, 2019—after the deadline for the filing of a Rule 7.06 motion had passed—the Kansas Supreme Court denied Macomber's motion to remove his attorney. The following day, the Clerk of the Appellate Courts explained to Macomber in a letter

that his Rule 7.06 motion would not be filed because he was represented by counsel when it was filed. Again, there is nothing in the record to suggest that Macomber reached out to his appellate counsel after receiving this letter.

Over a year later, Macomber filed a K.S.A. 60-1507 motion in which he alleged ineffective assistance of appellate counsel. In his motion, Macomber asserted that "appellate counsel was ineffective for informing him that his representation had concluded prior to the time-limit for filing a Rule 7.06 motion for rehearing had expired" and was also ineffective "for not filing a Rule 7.06 motion for rehearing." Subsequently, Macomber additionally filed a "Motion For Change Of Judge" in which he sought to disqualify Judge David B. Debenham—who had presided over his underlying criminal jury trial—from hearing his K.S.A. 60-1507 motion.

After Judge Debenham denied the motion for change of judge, Chief Judge Richard D. Anderson reviewed the affidavit of prejudice filed by Macomber in support of his motion. After doing so, Chief Judge Anderson issued an order denying the motion seeking Judge Debenham's disqualification. In so ruling, Chief Judge Anderson found:

> "In his motion, Macomber states he has cause to believe Judge Debenham harbors a personal bias against him.
>
> "To illustrate bias, a party must show the 'judge harbors a 'hostile feeling or spirit of ill will against one of the litigants, or undue friendship or favoritism toward one." *State v. Walker*, 283 Kan. 587, 608-09, 153 P.3d 1257 (2007) citing *State v. Foy*, 227 Kan. 405, 411, 607 P.2d 481 (1980). Previous rulings or decisions on legal issues are not sufficient to demonstrate bias. *Walker*, 283 Kan. at 609; K.S.A. 20-311d(d).
>
> "Macomber provides five allegations, three allegations of which do not directly tie to a prior ruling made by Judge Debenham. The three relevant allegations are that 1) At a pretrial hearing during the original trial, Judge Debenham allegedly mentioned an incident involving Macomber that occurred at the jail two weeks prior to trial, which

4

local media reported on the following day, despite the information being inaccurate; 2) Judge Debenham sarcastically smiled at Macomber following sentencing during the original trial; 3) At a pretrial hearing during the second trial, Judge Debenham referenced an ethical complaint Macomber had filed against him.

> "The allegations as presented by Macomber do not require the recusal of Judge Debenham. Macomber has failed to provide evidence that Judge Debenham harbors a hostile feeling against him such that Macomber will not obtain fair and impartial enforcement of the post-judgment remedies he seeks."

The matter was then returned to Judge Debenham, who subsequently issued a comprehensive 11-page memorandum decision and order in which he summarily denied Macomber's K.S.A. 60-1507 motion. After summarizing the underlying facts and making conclusions of law, Judge Debenham analyzed Macomber's allegations of ineffective assistance of appellate counsel by applying the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by our Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). In doing so, Judge Debenham found that the performance of appellate counsel was not deficient for sending the letter purportedly terminating his representation. Nevertheless, Judge Debenham concluded that, even if Macomber could show that counsel's representation fell below an objective standard of reasonableness, Macomber still could not meet the prejudice prong of the *Strickland* test.

As Judge Debenham explained:

"It is true that three Justices dissented from the majority's opinion regarding the harmlessness of the failure to provide the presumption instruction. However, this merely shows that the Court fully analyzed the issues in Macomber's case and, while the Justices did not unanimously agree on all issues, rendered a valid legal opinion with a majority of Justices affirming Macomber's conviction. It stands to reason, particularly because the Kansas Supreme Court is not known for capricious decision-making, that the Court is

unlikely to have ruled anew three short weeks after issuing its decision in Macomber's direct appeal. See *State v. Ingram*, 199 Kan. 16, 16, 427 P.2d 500, 500 (1967), *disapproved on other grounds of by State v. Sanders*, 209 Kan. 231, 495 P.2d 1023 (1972) ('The appellant has filed a motion for rehearing. We have considered the motion and find no issues which were not fully considered in the original case. The motion for rehearing is therefore denied.'). As a result, this Court is unable to find prejudice."

Judge Debenham then went on to analyze Macomber's K.S.A. 60-1507 motion under *Kargus v. State*, 284 Kan. 908, 169 P.3d 307 (2007), concluding:

"[In *Kargus*], the Kansas Supreme Court analyzed Kansas and federal law dealing with ineffective assistance of counsel in the relevant context of counsel not taking a certain action, e.g., filing an appeal or other post-conviction relief. The Court, relying on *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029 (2000), decided that the *Strickland* test was not applicable to a situation where counsel failed to file an appeal. The Court distinguished *Flores-Ortega*, however, because that case involved a constitutional right to counsel at a critical stage of a proceeding, whereas *Kargus* implicated statutory rights. Ultimately, the Court held:

"'Regardless of whether the right to counsel is statutory or constitutional, when felony charges place liberty at issue, and there is a right to effective assistance of counsel at a specific stage of the proceeding that is forfeited because counsel failed to protect the defendant's right to the proceeding, the *Flores-Ortega* test applies.'

*Kargus*, 284 Kan. at 921. The Court then analyzed *State v. Ortiz*, a case where the Court enumerated exceptions for allowing a party to file an appeal out of time. 230 Kan. 733, 640 P.2d 1255 (1982). After a discussion regarding the *Ortiz* exceptions and the *Flores-Ortega* test, the Court announced a new standard:

"'We hold that when a claim is made that counsel was ineffective for failing to file a petition for review following a negative outcome in a direct appeal from a felony conviction and sentence, the standards or test to be applied are: (1) If a defendant has requested that a petition for review be filed and the petition was

6

not filed, the appellate attorney provided ineffective assistance; (2) a defendant who explicitly tells his or her attorney not to file a petition for review cannot later complain that, by following instructions, counsel performed deficiently; (3) in other situations, such as where counsel has not consulted with a defendant or a defendant's directions are unclear, the defendant must show (a) counsel's representation fell below an objective standard of reasonableness, considering all the circumstances; and (b) the defendant would have directed the filing of the petition for review. A defendant need not show that a different result would have been achieved but for counsel's performance.'

*Kargus*, 284 Kan. at 928. This Court notes that the test outlined in Kargus appears, at first glance, to be better suited to the facts of this case. Here, Macomber contends appellate counsel was ineffective for failing to file a Rule 7.06 motion for a rehearing. However, is a failure to file a petition for review (a statutory right) akin to a failure to file a motion pursuant to a Supreme Court Rule? A motion for rehearing or modification is not a constitutional nor a statutory right. It is a procedural vehicle simply to ask the Court to reconsider its prior ruling.

"In applying the *Kargus* test, the Court would first need to find that counsel was deficient. As articulated above, the Court does not believe counsel Phelps's performance fell below an objective standard of reasonableness. Phelps informed Macomber of his right to petition to the Supreme Court of the United States and to file a K.S.A. 60-1507 motion. Macomber did not write to Phelps asking him to file a Rule 7.06 motion and Phelps seemingly felt there was no merit to such a motion. It is true that Macomber attempted to call Phelps's office, although he makes no claim that he otherwise tried to contact Phelps. However, assuming the Court did find Phelps's performance deficient, it would then need to find that Macomber 'would have directed the filing of the petition for review.' *Kargus*, 284 Kan. at 928. Macomber likely would have directed Phelps to file a Rule 7.06 motion, although he did not in reality. In any case, a Rule 7.06 motion is not akin to a petition for review.

"Finally, even if this Court made findings that Macomber satisfied both the *Strickland* and *Kargus* tests, it would be unable to grant the relief Macomber requests, which is for him to file a Rule 7.06 motion out of time. See *Kargus*, 284 Kan. at 929

7

(before remanding, determining whether the trial court could grant the relief Kargus sought, to file a petition for review out of time; the Court permitted the relief, although it did not consider whether other defendants could receive similar relief from trial courts); [*In re Care & Treatment] Emerson*, 306 Kan. 30, 30, 392 P.3d 82 (2017) (trial court cannot reinstate a dismissed appeal)."

Thereafter, Macomber filed a timely notice of appeal.

ANALYSIS

*Motion for Change of Judge*

On appeal, Macomber contends that the district court erred in denying his motion to change judge. In particular, he alleges that Judge Debenham was biased against him. Although he now argues that disqualification was appropriate under K.S.A. 20-311d, the Kansas Code of Judicial Ethics, and the Fourteenth Amendment's Due Process Clause, Macomber only sought a change of judge on statutory grounds below. Regardless, we find the result to be the same because Macomber's affidavit of prejudice was legally insufficient to justify the disqualification of Judge Debenham to decide his K.S.A. 60-1507 motion.

K.S.A. 20-311d(c)(5) provides that the grounds for seeking a change of judge include "bias, prejudice or interest of the judge such party cannot obtain a fair and impartial trial or fair and impartial enforcement of post-judgment remedies." In addition, Rule 2.11(A) under Canon 2 of the Kansas Code of Judicial Conduct (2022 Kan. S. Ct. R. at 501) states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Also, under certain circumstances, a judge's disqualification may be required under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 890, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009)

8

("[M]ost disputes over disqualification will be resolved without resort to the Constitution.").

As the Kansas Supreme Court has held:

"[W]hen all three types of arguments have been raised, the proper analysis for disqualification claims begins with the statutory framework and the Code of Judicial Conduct. Analysis under these provisions may eliminate the need for constitutional analysis, see *Wilson v. Sebelius*, 276 Kan. 87, Syl. ¶ 3, 72 P.3d 553 (2003) (appellate court should avoid making unnecessary constitutional decisions), because a claim based on K.S.A. 20-311d and/or the Code of Judicial Conduct that is resolved in the claimant's favor would end the matter. Also, it is at least theoretically possible that a claim invoking K.S.A. 20-311d and/ or the Code of Judicial Conduct may relate to a problem that does not implicate the Due Process Clause. See *Caperton*, 556 U.S. at 876 (kinship recusal generally matter of legislative discretion rather than one of constitutional validity); see also K.S.A. 20-311d(c)(3) (kinship basis for recusal)." *State v. Sawyer*, 297 Kan. 902, 907, 305 P.3d 608 (2013).

On appeal, we exercise unlimited review over whether a district judge's recusal is required. *State v. Moyer*, 306 Kan. 342, 369-70, 410 P.3d 71 (2017). We also exercise unlimited review in evaluating an affidavit in support of a motion for recusal filed under K.S.A. 20-311d. *State v. Robinson*, 293 Kan. 1002, 1032, 270 P.3d 1183 (2012); see *State v. Lyman*, 311 Kan. 1, 33-34, 455 P.3d 393 (2020), *cert. denied* 141 S. Ct. 174 (2020). In doing so, we must determine whether the affidavit provides facts and reasons that would create reasonable doubt concerning a judge's impartiality based on an objective standard of a reasonable person with knowledge of all the circumstances. *Robinson*, 293 Kan. at 1032.

A review of the record in this case reveals that Judge Debenham informally denied Macomber's motion pursuant to the procedure outlined in K.S.A. 20-311d(a). Then, Chief Judge Anderson performed a review of Macomber's affidavit of prejudice as required by

9

K.S.A. 20-311d(b). After reviewing the affidavit, Chief Judge Anderson denied Macomber's motion to change judge. In doing so, he ruled that "[t]he allegations as presented by Macomber do not require the recusal of Judge Debenham." He explained that the allegations set forth in the affidavit "failed to provide evidence that Judge Debenham harbors a hostile felling against him such that Macomber will not obtain fair and impartial enforcement of the post-judgment remedies he seeks." We agree.

Significantly, two of the allegations of bias asserted by Macomber in his affidavit related directly to a prior ruling issued by Judge Debenham. As Chief Judge Anderson correctly found, "[p]revious rulings or decisions on legal issues are not sufficient to demonstrate bias." See *State v. Walker*, 283 Kan. 587, 609, 153 P.3d 1257 (2007). As stated in K.S.A. 20-311d(d), "[i]n any affidavit filed pursuant to this section, the recital of previous rulings or decisions by the judge on legal issues . . . shall not be deemed legally sufficient for any belief that bias or prejudice exists." Consequently, we conclude that the allegations relating to prior rulings were not legally sufficient to establish that Judge Debenham was biased against Macomber.

In addition, Macomber alleged that at a pretrial hearing prior to his original jury trial, Judge Debenham inaccurately mentioned an incident involving him that was picked up by the media; that Judge Debenham sarcastically smiled at him following his original sentencing; and that, at a pretrial hearing prior to his second jury trial, Judge Debenham mentioned an ethical complaint that Macomber had filed against him. However, to illustrate bias, a party must show the "judge harbors a hostile feeling or spirit of ill will against one of the litigants, or undue friendship or favoritism toward one." *Walker*, 283 Kan. at 608. Like Chief Judge Anderson, we do not find these allegations to be sufficient to establish hostility or bias by Judge Debenham against Macomber.

Unfortunately, Macomber does not develop his argument for claiming that the Due Process Clause required disqualification of Judge Debenham. Instead, he cites to the

10

same claims of bias that are set forth in his affidavit. Certainly, there are cases in which "'the probability of actual bias . . . is too high to be constitutionally tolerable.'" *Caperton*, 556 U.S. at 877 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 [1975]). However, we do not find this to be one of those cases.

In *Caperton*, the United States Supreme Court listed four objective categories of cases where recusal or disqualification may be required by the Due Process Clause. First, where a judge has a direct and substantial pecuniary interest in the case. Second, where a judge has an indirect financial interest in the outcome of the case. Third, where a judge issues a contempt citation in one case and then proceeds to try the contempt charges. Fourth, where a litigant donates to a judge's campaign for office. 556 U.S. at 876-87.

We recognize that *Caperton* did not find these four circumstances to be exclusive. In fact, our Supreme Court has added that another type of situation in which the Due Process Clause may require recusal or disqualification is "when bias has previously been admitted [by a judge] and inadequately explained away." *Sawyer*, 297 Kan. at 910. Here, of course, none of these circumstances are present in this case. Further, Macomber's allegations of bias in this case do not rise to the level of the type of heightened risk of actual bias that violates the Due Process Clause.

In summary, we find that Macomber's allegations for disqualifying Judge Debenham are the same under each of the theories asserted on appeal. Specifically, Macomber bases his claim of bias on adverse rulings on legal issues made against him in the past and on his subjective interpretation of the judge's demeanor that is not supported by the record. Such allegations are not sufficient to require recusal or disqualification under K.S.A. 20-311d(c)(5), under Rule 2.11 under Canon 2 of the Kansas Code of Judicial Conduct, or under the Due Process Clause. Additionally, neither Macomber's affidavit nor the record on appeal are legally sufficient to establish actual bias, an objective appearance of bias, or a high probability of bias to be constitutionally

11

intolerable. Thus, we conclude that the district court did not err in denying Macomber's motion for change of judge.

*K.S.A 60-1507 Motion*

Additionally, Macomber contends that the district court erred by summarily dismissing his K.S.A. 60-1507 motion. Macomber argues that the appellate counsel who represented him in his direct appeal was ineffective because he "was effectively denied his right to file a 7.06 motion." In response, the State contends that Macomber "fails to establish he was prejudiced by any inability or failure to file a Rule 7.06 motion." In particular, the State argues that Macomber has failed to present an argument to establish that such a motion would have been successful.

When the district court summarily dismisses a K.S.A. 60-1507 motion, our review is de novo. In other words, we must determine whether the motion, files, and records of the case conclusively establish that Macomber is not entitled to relief. See *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). Similarly, the extent of a movant's statutory right to be provided with effective assistance of counsel in a K.S.A. 60-1507 proceeding is a legal question to be reviewed de novo. *Mundy v. State*, 307 Kan. 280, 294, 408 P.3d 965 (2018).

Claims of ineffective assistance of counsel are normally analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984). What has become known as the *Strickland* test was adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under this test, to establish ineffective assistance of counsel on appeal, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness based upon the totality of the circumstances, and (2) that there is a reasonable probability of being successful on appeal but for counsel's

deficient performance. *Khalil-Alsalaami v. State*, 313 Kan. 472, 526, 486 P.3d 1216 (2021).

Where there is a claim of ineffective assistance of counsel, judicial scrutiny of the attorney's performance is highly deferential. *Khalil-Alsalaami*, 313 Kan. at 485. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances surrounding the challenged conduct, and to evaluate the conduct from counsel's perspective at the time. There is a strong presumption that defense counsel's conduct or decisions fell within the wide range of reasonable professional judgment. *Khalil-Alsalaami*, 313 Kan. at 486.

Here, the district court reasonably concluded that Macomber failed to demonstrate that his appellate attorney's representation fell below an objective standard of reasonableness. Specifically, the district court found that appellate counsel was not ineffective for sending the letter to Macomber indicating that his representation had terminated after the Kansas Supreme Court affirmed his conviction. Moreover, the district court found that even if appellate counsel was ineffective for sending the letter to Macomber, he could not meet the second prong of the *Strickland* test.

The district court correctly pointed out that, in his letter, appellate counsel stated: "'I haven't heard from you identifying any grounds which you believe exist for rehearing or modification . . . [s]o that it can be filed timely by myself if grounds can be articulated for such relief.'" Appellate counsel also informed Macomber of the deadline for filing a Rule 7.06 motion and indicated that he would make himself available at any reasonable hour to discuss the matter with him. Nevertheless, there is nothing in the record indicating that Macomber ever responded to counsel's letter or asked him to file such a motion. Thus, we agree with the district court that the performance of appellate counsel did not fall below an objective standard of reasonableness based upon the totality of the circumstances.

Regardless, even if we assume that the performance of appellate counsel was ineffective for failing to file a Rule 7.06 motion, we also agree with the district court that Macomber has failed to establish a reasonable probability that he suffered prejudice as a result. As noted above, the second prong of the *Strickland* test requires a defendant to establish that that there is a reasonable probability of being successful on appeal but for counsel's deficient performance. *Strickland*, 466 U.S. at 694. Based on our review of the record on appeal, we find that Macomber has not shown a reasonable probability that the outcome of the appeal would have been different had appellate counsel filed a Rule 7.06 motion.

We find that Macomber does not include a colorable argument in his K.S.A. 60-1507 motion or in his brief to show a reasonable probability that one of the justices in the majority would have changed his or her vote in his direct appeal. Instead, he simply refers to the minority position taken by the dissenters in support of his arguments. Of course, this position had already been considered and rejected by the majority. It is speculative at best to suggest that merely rehashing the same arguments in a Rule 7.06 motion for rehearing would have somehow changed the outcome. Consequently, Macomber has presented no basis for a finding of prejudice.

Finally, we are not persuaded by Macomber's argument that the *Strickland* test for ineffective assistance of counsel is inapplicable to his K.S.A. 60-1507 motion. Although he cites *Kargus*, 284 Kan. at 908, as support for this position, it is distinguishable from this case. As the parties are aware, *Kargas* involved a claim of ineffective assistance of appellate counsel for failing to file a petition for review after this court affirmed the defendant's conviction. Here, appellate counsel successfully filed a petition for review after this court affirmed his conviction. Furthermore, in affirming Macomber's conviction, our Supreme Court issued a comprehensive 21-page opinion in which it addressed each of his arguments. *Macomber*, 309 Kan. at 907-28.

14

In summary, we conclude that the district court did not err in denying Macomber's motion for change of judge. Likewise, we conclude that the district court did not err in summarily denying Macomber's K.S.A. 60-1507 motion. As a result, we affirm the district court's decisions.

Affirmed.